## WORTHINGTON MEIXELL v. S. S. KIRKPATRICK.

1. PLEA; *General Appearance.* Generally speaking, any plea or proceeding which raises questions non-jurisdictional and involving the merits, is a general appearance, and waives all questions as to the regularity of service.

2. TWO JOINT DEBTORS—*Release of One, not the Other.* Where an action sounding in tort against two parties is carried on to a judgment against both, each defendant becomes thereafter a joint debtor, within the scope of chapter 75, Comp. Laws 1879, and the plaintiff may compromise and release his judgment against either without fully satisfying and discharging his claim against the other.

| 29 | 679 |
|----|-----|
| 40 | 145 |
| 29 | 679 |
| 50 | 737 |
| 29 | 679 |
| 56 | 138 |
| 56 | 719 |
| 29 | 679 |
| 57 | 812 |
| 29 | 679 |
| 58 | 235 |
| 29 | 679 |
| 60 | 287 |
| 29 | 679 |
| 64 | 147 |
| 29 | 679 |
| 65 | 481 |
| 29 | 679 |
| 78 | 634 |

3. BONDS; *Market Value; Misleading Instruction.* Municipal bonds have been so much multiplied as to become an article of regular commerce, and to be possessed of a market value. Hence, in an action in the nature of trover for the conversion of such bonds, the measure of damages is the market value. And while in the absence of any testimony as to value, the face value may be considered the market value, yet when there is direct testimony as to the market value, and the court refuses an instruction that the market value is the measure of damages, but instructs that the face value is "*prima facie* the measure of damages, though the jury may consider any testimony which tends to diminish such value, and make their estimate accordingly," and upon such instruction the jury return a verdict, which is apparently much in excess of the real market value, *held*, that such instruction is misleading, apparently caused an excessive verdict, and is such as to compel the reversal of the judgment, and a new trial.

4. DAMAGES, *Measure of.* One who contracts for the purchase of municipal bonds at a given price, and thereafter fails to obtain possession of the bonds, in consequence of a wrongful act of the agent of the vendor, having paid nothing on the contract, is entitled to recover as his damages, not the value of the bonds, but only such value less the contract price.

### Error from Wilson District Court.

THE history of this action, and the facts, appear in the opinion. At the May Term, 1881, of the district court, plaintiff *Kirkpatrick* had judgment for $7,500 and costs against defendant *Meixell*, who brings the case here.

*C. H. Kimball*, for plaintiff in error.

*Hutchings & Denison*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The controversy between these parties has been pending since July, 1877, and, in one form or another, has been already three times in this court. (25 Kas. 13; 25 id. 19; 28 id. 315.) A brief history will help to a solution of the questions involved. On or about June 15, 1877, one Forsyth was the owner of certain municipal bonds issued by the townships of Cedar and Center, and the city of Fredonia, the par value of which was $8,000. On that day he entered into a contract in writing by which he gave to the plaintiff, the defendant in error, the refusal of these bonds for $3,100,

to be paid to Angell Matthewson, at the First National Bank at Parsons, any time before July 1, 1877. The bonds, with a copy of this contract, were left with said Matthewson. On June 30, shortly after banking hours had closed, Kirkpatrick having failed to put in an appearance, Matthewson sold the bonds to Meixell, the present plaintiff in error. Thereafter, and before sundown of that day, Kirkpatrick came, tendered the contract price, and demanded the bonds. Failing to get them, he brought this action. It appears that immediately after his purchase Meixell sold the one-half interest in the bonds to Matthewson. The action was commenced in the Wilson county district court, and against Matthewson, Meixell and Forsyth. Service was made in that county on Matthewson, and thereafter in Labette county, on Meixell. Forsyth seems to have been dropped out of the case altogether. While no writ of replevin was issued or asked for, the petition stating the facts prayed for a recovery of the bonds or their value. To this petition a demurrer was filed upon several grounds — some jurisdictional, and some not; among others, that the court had no jurisdiction of the person of the defendant, that the petition did not state facts constituting any cause of action, and that several causes of action were improperly joined. The court sustained the demurrer, on the ground that several causes of action were improperly joined. It at the same time gave the plaintiff leave to file separate petitions against defendants Meixell and Matthewson. Petitions were filed in pursuance of this order, and the defendant Meixell failing to answer, judgment was rendered against him for the sum of $9,475, the value of the bonds, and costs. Thereupon defendant moved to set aside that judgment, and for leave to file an answer. Such proceedings were had as to result in a second judgment against Meixell, which judgment was reversed in this court in the case first cited. Meantime, certain arrangements were had between the plaintiff and defendant Matthewson, against whom a judgment had been also obtained, which resulted in an assignment of the judgment against Matthewson to his wife. Thereupon Meixell brought his

action to restrain the collection of the judgment against him. The ruling of the district court, refusing to restrain the collection of such judgment, was affirmed here in the second case cited, *supra*. Trial was again had of the issues in the case originally brought by Kirkpatrick against Meixell, which resulted in a judgment of $7,500 for the plaintiff. To review this judgment, this present proceeding in error has been brought.

In support of his petition, plaintiff in error makes some twelve allegations of error. We shall not attempt to consider them all, for we think, upon the record, the plaintiff in error was entitled to a new trial, and therefore we shall not stop to consider those matters which rest largely in the discretion of the district court, but shall notice only those matters which we think entitle the plaintiff in error to a new trial, and those which may become material in the progress of such new trial.

First, as to the question of jurisdiction. It is insisted, as this action was commenced in Wilson county, and service only made upon the defendant in Labette county, that therefore the court had no jurisdiction of the person of the defendant. It seems strange that, after five years of litigation, this question of the jurisdiction of the person should still be a matter of inquiry, and yet as it is presented it requires consideration and determination; for if the court had no jurisdiction of the person of the defendant, that avoids the necessity of all further inquiry. Had the district court such jurisdiction? This question must be answered in the affirmative. The action was commenced in Wilson county, against Matthewson and Meixell. Matthewson was served in that county, and Meixell in Labette county. Now if Matthewson and Meixell were improperly joined as defendants, and that fact was made to appear, and the single question of jurisdiction over Meixell presented, it may be conceded that no jurisdiction over Meixell was obtained, and that the plea to the jurisdiction should have been sustained. But it is also true that the district court of Wilson county had ample jurisdiction over the

subject-matter, and when Meixell appeared in that court, and

*1. Plea—general appearance.* by his pleadings raised questions other than jurisdictional, he thereby submitted himself and his rights to the jurisdiction of that court. When served with the summons, he appeared and filed a demurrer, which, while it alleged a lack of jurisdiction, presented also a number of other defenses, and defenses on the merits. Such plea, by the prior adjudications of this court, was equivalent to an appearance. A party who denies the jurisdiction of the court over his person must first present this single question. He may not mingle with his plea to the jurisdiction other pleas which concede jurisdiction, and thereafter insist that there was error in overruling his plea to the jurisdiction. As heretofore stated, the defendant by his demurrer raised a number of questions other than those which were jurisdictional, and invoked the judgment of the court thereon. By such other pleas, he submitted himself and his rights to the jurisdiction of the court, and can no longer be heard to say that it had no jurisdiction. (*Greenwell v. Greenwell*, 27 Kas. 530; *Bury v. Conklin*, 23 Kas. 460; *Burdette v. Corgan*, 26 Kas. 102; *Carver v. Shelly*, 17 Kas. 472; *Hendrix v. Fuller*, 7 Kas. 331; *Cohen v. Trowbridge*, 6 Kas. 385; *Hefferlin v. Stuckslager*, 6 Kas. 166.)

The second question we deem important, is as to an alleged settlement and satisfaction. As heretofore intimated, the court upon the hearing of the demurrer sustained it upon the ground of an alleged misjoinder of actions, and permitted the filing of a separate petition as against each of the two defendants, Matthewson and Meixell. Upon separate trials of the issues thereafter joined as against each, a judgment was rendered in favor of plaintiff, and against each. After such judgments, plaintiff settled and compromised with Matthewson. At the request of Matthewson, instead of releasing the judgment against him, he assigned the judgment to Mrs. Matthewson, and she thereafter entered full release and satisfaction. Now it is contended that this operated as a satisfaction of all claims against the defendant

Meixell, and this upon the theory that a judgment in an action of trover represents the price or value of the property, and that a satisfaction of such judgment waives and releases all further claims to the property or to its value. So far as this proposition stands as a general proposition, it is well supported by authority, and we have no disposition to dissent therefrom. Where there is but a single defendant, and a judgment of trover is rendered against him, and such judgment is thereafter satisfied, the satisfaction releases all claims of the plaintiff to either the property, or its value. (*Lovejoy v. Murray*, 3 Wall. 17; *Thurst v. West*, 31 N. Y. 210; Cooley on Torts, 458; 1 Greenl. on Ev., § 533; *Bell v. Campbell*, 17 Kas. 211.) But that is not this case. Here there were two defendants, each of whom was charged with a tort against the rights of the plaintiff. Against each a judgment was rendered. Thereafter they were debtors of the plaintiff, judgment debtors. Under those circumstances, by the provisions of our statute, (Comp. Laws 1879, ch. 75,) the plaintiff might compromise with and release either without destroying his claim against the other. (See also *Irvine v. Millbank*, 36 Superior Court N. Y. 264; *Irvine v. Millbank*, 56 N. Y. 635.) Of course one full payment by either debtor discharges the entire debt, but a compromise with one operates only as satisfaction *pro tanto* of the claim against the other. Hence the payment of $500 by defendant Matthewson, being a compromise of the judgment claim against him, operated only as a satisfaction *pro tanto* of the claim against Meixell. (3 Wall. *supra*.) And notwithstanding the form in which this transaction was accomplished, namely, an assignment to Mrs. Matthewson, and a satisfaction by her, we think the exact facts and terms between the parties could be proved as they were by parol. We find no fault with the ruling of the court in this respect, unless it be in the fact that it failed to treat the $500 as *pro tanto* a satisfaction of plaintiff's claim.

Again, this action, as heretofore intimated, was for the recovery of eight municipal bonds of the par value of $8,000,

*2. Two joint debtors; release of one, not the other.*

or their value.  On the trial, one witness, Matthewson, testified that such bonds were worth in the market from thirty to fifty cents; another witness, that they had no market value, but were offered for sale about the time from twenty-five to thirty per cent., but that he thought they were worth their face, less the cost of collection.  This was the only direct testimony as to value, and indeed the only evidence of value, save such as would be implied from certain conversations between plaintiff and defendant.  The defendant asked the court to instruct the jury that the measure of damages was the market value of these bonds.  This instruction the court refused, and in lieu thereof gave the following:

"The rule for measuring the damages is this: *Prima facie* value is the amount due on them, both principal and interest. You should, however, in ascertaining their value, consider any and all evidence, if any has been produced, which tends to diminish their value, and make your estimate accordingly."

The contract price of these bonds as between Forsyth and the plaintiff was $3,100; the value as found by the jury, $7,500.  We are constrained to think that the instruction of the court as to the measure of damages was misleading, and the value as returned by the jury excessive.  It is undoubtedly true that as to a note, a bill of exchange, or any other chose in action, the damages for its conversion are *prima facie* the amount due thereon. (Field on Damages, § 823; *Booth v. Powers,* 56 N. Y. 22.)  As to municipal bonds this difference should be recognized: while they are in a certain sense mere promises to pay, and in that respect resemble ordinary choses in action, yet courts may not blind their eyes to the fact that they have become so abundant as to rank with ordinary chattels personal, with a market value like that which obtains as to corn, wheat, etc.; and where any article has an established market value, that value is the measure of damages in any action of conversion.  We do not doubt that a municipal bond so far resembles an ordinary chose in action that, where no evidence of value is offered, its face value is to be deemed the market

3. Bonds; market value; misleading instruction.

value, and to this extent the instruction of the court is beyond criticism; but we think that it must be also conceded that such securities have become so abundant, and so much received as an article of ordinary commerce, that they possess strictly speaking a market value; and when such market value is shown, that is to be deemed as the measure of damages for any conversion. Now the instruction given by the court, inasmuch as it refused any consideration of the market value and directed the attention of the jury to the face value, except as to evidence impeaching such face value, would we think naturally mislead the jury. The contract price as undisputed was $3,100; the market value by the evidence was but little if any in excess of this amount, and yet the jury valued the bonds at $7,500. It seems to us they could have reached this conclusion only by following the letter of the court's instruction, and placing the damages at the face value, except as limited by the responsibility of the obligors and the cost of collection. In no other way can we satisfactorily account for the value as returned by the jury. It certainly was not in response to any testimony as to market value, or contract price, or price in fact obtained. The jury evidently must have considered the face value as controlling, and reduced only by the expense of collection and the probable pecuniary responsibilities of the municipal corporation. While we should be glad to terminate the controversy between these parties with the present trial, and end the litigation which has continued so many years, we can but think that the jury reached their conclusion herein as to the damages from an erroneous valuation, a valuation induced if not compelled by the instruction of the court. The plaintiff purchased these bonds for $3,100. That, from the testimony, would seem all that could have been realized from their sale, and there is no testimony from which we think it could fairly be deduced that intermediate the sale and the trial they had advanced nearly 250 per cent. in value. Obviously the jury approached a question of value from the wrong standpoint, and obviously they were led to this by the refusal of the court

to grant the instruction asked by defendant, and giving that which it did. Reluctantly we are constrained to say that in this there was error materially prejudicial to the rights of the defendant, and which compels us to withhold our assent from the conclusion reached by the jury. For this error the judgment must be reversed, and the case remanded for a new trial.

One other matter requires notice — a matter which could perhaps be corrected upon the findings of fact made by the jury without any new trial, if this were the only error. As heretofore stated, the action was for the recovery of bonds or their value. The testimony showed that the bonds had passed beyond the control of the defendant, so that, as well said by counsel for defendant in error, the action was one in effect for the wrongful conversion of the bonds. Now it is undisputed that the plaintiff contracted to purchase these bonds for $3,100; that he did not in fact obtain the bonds, and that he paid nothing, because the bonds had wrongfully been transferred to defendant, the latter paying to the original owner the contract price of $3,100. The original owner has therefore no further claim. The present plaintiff is entitled to recover from the defendant the bonds upon the payment of $3,100, and such other sums as he has already received on account of the wrong committed against him. But the judgment to be rendered in his favor should not include the amount he has agreed to pay, or the amount he has already received. He agreed to pay $3,100, but in fact paid nothing, so that he was damaged by the wrongful action of the defendant only to the extent of the difference between the value of the bonds and the $3,100 contracted to be paid. That was in the first instance his damages, and if since then he has received any sum of money on account of such wrongful conduct, such moneys received operate *pro tanto* as a satisfaction of his claim for damages. If this were the only error, we think, upon the special findings of fact made by the jury, the judgment could be corrected; but for the matters heretofore noticed a new trial must be granted, and we only refer

4. Damages, measure of.

to this in order that it may be corrected upon the subsequent trial.

These are all the matters we deem necessary to consider. Several matters of practice, and several rulings in the trial, we have not noticed, because we think they will become unimportant on the subsequent trial.

The judgment of the district court will be reversed, and the case remanded for a new trial.

All the Justices concurring.