No. 19,860.

THE CITY OF TOPEKA, *Appellee,* v. GEORGE W. BROOKS et al.
(The Title Guaranty & Surety Company, *Appellant*).

· No. 20,632.

THE CITY OF TOPEKA, *Appellee,* v. GEORGE W. BROOKS and THE
TITLE GUARANTY & SURETY COMPANY, *Appellants,* et al. ·

### SYLLABUS BY THE COURT.

1. SEWER CONTRACT—*Partnership—Indemnity Bond—Fraud—Release of
   One Joint Debtor—Right to Pursue Other Wrongdoer.* A city ob-
   tained a judgment against one member of a partnership for damages
   sustained by the fraudulent acts of the partnership and failure to com-
   plete a contract for the construction of a sewer. It released the judg-
   ment in a written instrument expressly reserving the right to sue the
   other partner and the surety on the contractors' bond. *Held,*

   (*a*)  that the release of the judgment against one of those jointly
   and severally liable was, in effect, a covenant not to sue, and did
   not prevent the city from subsequently prosecuting an action against
   the other partner and the surety (*Edens v. Fletcher,* 79 Kan. 139, 98
   Pac. 784);

   (*b*)  that a partial satisfaction of a judgment against one joint
   debtor and the release of the same will operate only as a payment
   *pro tanto* of the indebtedness of the other debtors.

2. SAME—*Judgment Against One Joint Debtor—Tender of Amount Did
   Not Release His Joint Debtor.* In a subsequent action brought by the
   city against the other joint debtors the defendants tendered to plaintiff
   and offered to pay into court the judgment against the other joint
   debtor, which had been released. *Held,* that defendants could not
   better their position by offering to pay the former judgment.

3. SAME—*Judgment Against One Joint Debtor—Liability of Other Joint
   Debtors.* In the first action the city, in addition to the judgment which
   it released, obtained a judgment applying upon the indebtedness of
   plaintiff a claim which the city owed him personally, and upon which
   he had brought the action. *Held,* that as the defendants in the present
   action were given credit for the amount of this counter-claim, it was
   proper to render judgment against them for reasonable costs, at-
   torneys' fees and expenses incurred by the city in establishing its right
   to the credit.

4. SAME—*Indemnity Bond—Obligation of Surety.* The obligation of the
   surety company in this case is held to be an unconditional promise to
   answer for the defaults of the contractors, and therefore the city
   is not estopped to maintain an action upon the bond by reason of
   the fact that before the fraud was discovered it paid the contractors
   in full, nor by reason of the fact that the surety company released cer-

tain funds it held to indemnify itself against loss under the belief that the city had accepted the sewer.

Appeals from Shawnee district court, divison No. 1; ALSTON W. DANA, judge. Opinion filed February 10, 1917. Both affirmed.

*T. F. Garver, Robert D. Garver,* and *Edwin D. McKeever,* all of Topeka, for the appellants.

*Frank G. Drenning,* of Topeka, and *George P. Hayden,* city attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The city of Topeka recovered in this action a judgment for $19,231.97 against one member of a firm of contractors and the surety company for overpayments made upon a contract for the construction of a sewer. The defendants appeal.

The action originally was against G. W. Brooks and M. W. Gilmore, partners as Brooks & Gilmore, and their surety, and was commenced October 1, 1907. The sewer had been completed in 1905. While the action was pending, Gilmore brought suit against the city to recover an amount due him upon an individual contract for certain paving work, and in that case the city pleaded as a defense to his claim the same matters which are alleged in the petition in the present case. On the trial of that case it was determined that Gilmore owed the city the sum of $8327.78 on account of the overpayments to Brooks & Gilmore on the sewer contract. Gilmore was given credit for $3580.88 due him on his paving work, and the city was given a judgment against him for the balance of $4746.90. That judgment was never paid, and on June 19, 1914, the city agreed with Gilmore that if he would assist in the preparation of this case for trial, look up his sewer records and "rock notes," and testify at the trial, the city would release and satisfy the judgment. This agreement was carried out; the judgment was released by a written instrument expressly reserving to the city the right to proceed against Brooks, the former partner of Gilmore, and against the surety company. In the present case a referee was appointed in

October, 1914, who found against Brooks and the surety company, and the district court rendered judgment in accordance therewith.

The referee found among other things that Brooks & Gilmore entered into the partnership August 1, 1904, for the sole purpose of performing the contract for the construction of the sewer in question, and as partners never engaged in any other enterprise; that James F. McCabe, as city engineer, without the knowledge or consent of the mayor and city council, included in the monthly estimates, and the city paid, at contract prices for different sizes of main and lateral sewers which the contractors did not furnish or construct; that he also raised the grade throughout the system from one to eleven feet above the grade provided in the plans and so relieved the contractors from excavating and back-filling to the amount of more than 6000 cubic yards, making no deduction in the monthly or final estimate for such omitted work; and that Brooks & Gilmore had full knowledge of the fraud and knowingly overcharged and received pay for all the extra work as well as for the work omitted; that acting thus in collusion with the city engineer they received pay for many yards of loose rock more than that actually excavated, and also received from the city pay for the excavation of about 3000 cubic yards of solid rock although they had excavated less than 1000 cubic yards. There were many other items unnecessary, to mention here, in which the city was overreached in this manner. The referee found that as a part of the secret agreement between the partners and McCabe, and upon his demand, they paid to him for his personal use at different times while the work was in progress sums amounting to $2500.

1. The first claim is that the city, having satisfied and released the judgment against Gilmore for the wrongs complained of, is barred from maintaining this action to recover damages for the same wrongful acts. The defendants rely upon the principle declared in *Westbrook v. Mize,* 35 Kan. 299, 10 Pac. 881, the first paragraph of the syllabus of which reads:

"Where several persons jointly commit an injury, the liability is joint and several, and the party injured may sue all of them in a single action, or he may sue them separately at the same time; but although

several judgments may thus be obtained, there can be but one satisfaction, and the acceptance of payment in full upon the judgment obtained against one of such persons will operate as a bar to the further prosecution of actions for the same injury against any of the others."

In *Railway Co. v McWherter*, 59 Kan. 345, 53 Pac. 135, it was said in the opinion: "The soundness of the general rule that a settlement with one of two joint tortfeasors ordinarily discharges both, is recognized" (p. 351), but the court also recognized an exception to the rule in a case where "the wrongful act is not done jointly by the persons from whom compensation is sought, but is the deed of one or the other and not of both" (p. 352). In such a case the court said it was "unable to perceive on what principle a settlement with and discharge of one affects the cause of action against the other." (p. 352.) The defendants' contention is this: On the identical cause of action stated in the petition in this case the city recovered a judgment against one of the firm of partners contracting with the city to construct the sewer. The legal liability upon which it recovered that judgment was the same as in this case—the liability of one partner for the wrongs committed by the firm; and while the liability of each partner was joint and several, each was liable for the same amount. It is insisted, therefore, that every element is present upon which the rule in *Westbrook v. Mize*, supra, is predicated. The trial court approved the referee's conclusion of law that the release of the Gilmore judgment did not release or satisfy the city's claim against the other partner "except as to the amount actually collected by the city from Gilmore, which was the sum due him on his paving contract." This ruling was based upon the authority of *Meixell v. Kirkpatrick*, 29 Kan. 679; *Edens v. Fletcher*, 79 Kan. 139, 98 Pac. 784, and the statute authorizing compromises by partners or joint debtors (Gen. Stat. 1915, §§ 6786-6790). In the Edens case the opinion contains a comprehensive review of the authorities by Mr. Justice Benson, who wrote the opinion. That case differs from this in two respects; there the release was executed before any judgment had been rendered, here after judgment against the joint wrongdoer; in that case no partnership liability was involved, here as to one of the defendants the liability was that of a partner. In the Edens case the rule adopted in New York

and believed to be in accordance with the weight of reason and of modern authority was followed. That rule is, that the intent of the parties to the release controls, and where the creditor or injured party expressly reserves the right to pursue the other wrongdoer, the release of one can not be set up as a defense by the other. The compromise or satisfaction is regarded as a covenant not to sue, instead of a technical release. If, on the other hand, it is an absolute release, the rule declared in *Westbrook v. Mize,* 35 Kan. 299, 10 Pac. 881, controls, and the instrument necessarily discharges the liability of any other person either jointly or as surety therefor. We perceive no adequate reason why the intention of the parties to the compromise should not be carried out or a different rule enforced on the mere ground that the compromise or release was entered into after judgment had been rendered. It was in effect just as much a covenant not to sue—that is, not to pursue the person further upon the judgment—as was the agreement in the Edens case which was given after suit was commenced and before the action had resulted in a judgment. The release of the judgment as to Gilmore expressly shows that the consideration was not accepted in full compensation for the debt or injury, and should not be given an effect contrary to the intent with which it was executed.

For another sufficient reason the defendants' contention can not be sustained. The statute expressly authorizes settlements by one partner or joint debtor without affecting the liability of the other. (Gen. Stat. 1915, §§ 6786-6790.) It is provided in section 6788 that—

"Such composition or compromise with any individual member of a firm shall not be construed as to discharge the other copartners, nor shall it impair the right of the creditor to proceed at law or in equity against the members of such copartnership firm as have not been discharged."

In the opinion in the Edens case, *supra,* mention was made of section 2038 of the General Statutes of 1915 as adopting the old rule of equity in such cases. That section reads:

"Any person jointly or severally liable with others for the payment of any debt or demand may be released from such liability by the creditor, and such release shall not discharge the other debtors or obligors beyond the proper proportion of the debt or demand for which the person released was liable."

We conclude, therefore, that a partial satisfaction of a judgment against one joint debtor and the release of the same operate only as a payment *pro tanto* of the indebtedness of the other joint debtors.

2. The defendants tendered in court the amount of the Gilmore judgment, and their second contention is that the partnership liability of Brooks & Gilmore was fully determined in the action against Gilmore, and therefore the city is estopped to claim a larger indebtedness than the sum then found to be due. If the city had accepted the tender the defendants would have been discharged from further liability. (*Westbrook v. Mize,* supra.) But the city declined to accept it, and insisted upon establishing against these defendants a greater liability than the amount found due from Gilmore.

It seems that when the Gilmore case was tried the city had not discovered the extent of the contractors' fraud nor the extent of its loss thereby. Neither of these defendants was a party to the Gilmore suit. They were not bound by anything determined therein, except that any sums recovered and collected by the city in that action would to that extent reduce their liability to the city. Our statute declares that "All contracts which are by the common law joint only, shall be construed to be joint and several." (Gen. Stat. 1915, § 2034.) Also, that "Suits may be brought and prosecuted against any one or more of those who are . . . liable." (Gen. Stat. 1915, § 2037.) In *Martin v. City of Chanute,* 96 Kan. 433, 436, 152 Pac. 20, it was held that the effect of these statutory provisions is that liability or obligation is not merged in the judgment against one of the contractors, and where such judgment remains unsatisfied it is no bar to a subsequent action against another of the debtors, citing *Jenks v. School District,* 18 Kan. 356. The judgment was not *res judicata* because the parties are not the same. (*Martin v. City of Chanute,* supra.) The defendants could not better their position by offering to pay a judgment to which they were not parties and which had been released by the judgment creditor.

3. In the Gilmore case the city was obliged to pay the costs, and also incurred certain expenses for attorneys' fees and for procuring evidence to establish the fraud of the contractors. The court included in the judgment in the present

case the sum of $1052.25 for these costs and expenses. This it is claimed was error. The referee found the expenses to be reasonable and necessary in order to establish liability against Gilmore. As a result of the litigation with Gilmore the city recovered and applied on the liability of the defendants in this action $3580.88, which it owed to Gilmore for paving, and to that extent the defendants received the benefit, having been allowed credit for that amount in the judgment in this case. The recitals of the surety bond bound the surety company to pay all damages, costs, and expenses of every kind, character and nature incurred in consequence of the contract for constructing the sewer. The costs and expenses were properly included in the judgment (*Bank v. Williams,* 62 Kan. 431, 63 Pac. 744; *Bourke v. Spaight,* 80 Kan. 387, 102 Pac. 253.)

4. The surety company presents one more contention. At the time it executed the bond it received from Brooks & Gilmore the sum of $7500 in cash to indemnify it from loss upon the bond, but under an agreement which bound it to return the money as soon as the bond was released without liability to the surety company. It alleged in its answer these facts, and further, that after the completion of the sewer it retained the money for a time, but was forced to surrender it to Brooks & Gilmore by threats and a demand to return the same made by the insurance department of the state of Kansas at the instance of the contractors, and by reason of an impending suit against it by the contractors. It was further alleged that the money was returned to Brooks & Gilmore only upon notice from James F. McCabe, city engineer, duly attested by the city clerk, that the contractors had completed the work in accordance with their contract and that the sewer had been accepted by the city. The court sustained a demurrer to this part of the answer.

The referee found that while the city paid Brooks & Gilmore the balance due on the contract, it took no other action toward accepting the sewer and the work upon the contract. Had there been no false charges, no bribery or fraud, there might be some force in the claim that the city by paying the balance to the contractors accepted the work as completed according to the contract. But the city was not aware of the fraud and

the conspiracy whereby it suffered a loss. The obligation of the surety company was an unconditional promise to make good the defaults of the contractors. Under the authority of *McMullen v. Loan Association*, 64 Kan. 298, 308, 67 Pac. 892, and *Hier v. Harpster*, 76 Kan. 1, 90 Pac. 817, we must hold that there was no positive duty resting upon the city to discover the fraud sooner, and that notwithstanding the delay in seeking to enforce the surety's liability and regardless of the fact that the surety had in the meantime surrendered its indemnity, the city is entitled to recover upon the bond the full amount of the loss sustained through the fault of the principals.

The judgment is affirmed.