No. 45,697

AUBREY TINSLEY SADE, *Appellant,* v. J. E. HEMSTROM, RALPH SOLDAN, BOB BAUMAM and DWIGHT NELSON, *Appellees.*

(471 P. 2d 340)

Opinion filed June 13, 1970.

*J. Eugene Balloun,* of Turner and Balloun, of Great Bend, argued the cause, and Vance, Hobble, Neubauer, Nordling and Sharp, of Liberal, was with him on the briefs for the appellant.

*Robert Hall,* of Adams, Jones, Robinson and Manka, of Wichita, argued the cause, and Kelly, Connor and Opie, of Great Bend, was with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: In this action for damages for personal injuries plaintiff-

appellant, Aubrey Tinsley Sade, appeals from a summary judgment rendered in favor of defendants-appellees.

Plaintiff was an employee of Dresser Engineering Company on July 24, 1965, when he suffered the injuries complained of while engaged, with fellow employees, in placing a "T" connection in a pipeline owned by Northern Natural Gas Company (hereafter referred to as Northern), employer of the four defendants-appellees.

The gist of plaintiff's cause of action is set out in paragraphs II, III and IV of his petition which read as follows:

"II

"On the date above mentioned the valve on the pipeline of Northern Natural had been closed, preventing passage of gas through the line. With knowledge of the fact that Dresser's employees, including Aubrey Tinsley Sade, were engaged in working on said gas line, one or more of the individual Defendants negligently activated the electric switch which controlled the pipeline valve, causing it to be opened for a short period of time, and permitting gas to be forced through said line at a high pressure into the area in which Aubrey Tinsley Sade was working. The gas exploded and a flash fire resulted, causing Aubrey Tinsley Sade permanent and painful injury, including severe burns from such exploding and burning gas.

"III

"That Defendants knew or should have known such an accident would occur if said electrical switch was activated, and as the employees in charge of the Northern Natural line and safety of said plant should have taken steps to prevent the unintended activation of said switch.

"IV

"As a direct result of the negligent acts and omissions of Defendants, Plaintiff, has been damaged in an amount in excess of $80,000.00.

"WHEREFORE, Plaintiff prays judgment against those of the individual Defendants who activated the said switch and whose omissions made it possible for said switch to be activated for the sum of $80,000.00 and for costs."

The defendants answered alleging they were employees of Northern and that at the time they were engaged in the course and scope of their employment. The position taken by defendants in this litigation is set out in paragraph (5) of their answer which reads:

"These answering defendants further allege that on or about December 8, 1965, plaintiff compromised and settled his claim for personal injuries suffered as a result of the explosion described in his petition. That plaintiff received the sum of Seventeen Thousand Five Hundred Dollars ($17,500.00) from the said Northern Natural Gas Company and executed the 'Compromise and Settlement Agreement' attached hereto and made a part hereof by this reference. That said recovery for his injuries and execution of said instrument constitutes an unconditional release by plaintiff and bars any further recovery by plaintiff for injuries alleged in his petition."

Pertinent portions of the Compromise and Settlement Agreement, signed by plaintiff and his wife, read:

"WHEREAS, the Undersigned possesses certain claims against Northern arising out of injuries sustained by the Undersigned on or about July 24, 1965, at Northern's Tescott compressor station, for which the Undersigned claims Northern is legally liable, which liability is denied by Northern; and

"WHEREAS, the parties hereto have come to a mutual understanding and agreement respecting such claims and are desirous of effecting a compromise and settlement thereof.

"Now, THEREFORE, in consideration of the payment herein provided for and of the mutual agreements herein expressed, the parties do hereby agree as follows:

"(1) The Undersigned hereby acknowledges receipt of Seventeen Thousand Five Hundred Dollars ($17,500.00), which sum is accepted, in addition to the other consideration herein provided for, in full settlement and satisfaction and for the full release and discharge (except as hereinafter provided) of all actions, claims and demands whatsoever that may now or hereafter exist against Northern on account of all injuries to the person of, and any damage to the property of, the Undersigned, the treatment thereof, and consequences flowing therefrom, as a result of the accident, casualty or event which occurred on or about the 24th day of July at or near Northern's Tescott, Kansas compressor station.

"(2) Northern hereby covenants to protect, hold harmless and indemnify the Undersigned from and against any claims, demands, invoices, charges or statements against the Undersigned because of any payments heretofore or hereafter made under applicable Workmen's Compensation Laws, or because of any payments heretofore made to or on behalf of the Undersigned by any other third party on account of or resulting from the accident described in paragraph (1).

"(3) The Undersigned warrants that no promise or inducement other than as herein contained has been offered by Northern and that this Agreement contains the entire contract between the parties and is executed without reliance upon any statement or representation by Northern, its employees, representatives, agents, or any physician, concerning the nature and extent of the Undersigned's injuries and damages and liability therefor. This Agreement shall constitute a complete defense for all purposes as to the claims and demands released herein and may be offered in evidence thereof for such purpose in any action or proceeding of any kind or nature."

Plaintiff filed a reply to defendants' answer which, in pertinent part, reads as follows:

"FURTHER replying the plaintiff admits the execution of the Compromise and Settlement Agreement attached to the Defendants Answer, but denies that the same has the legal effect of or was ever intended to release, any parties other than Northern Natural Gas Company and that the individual Defendants in this case are still primarily responsible to the Plaintiff for their negligent acts notwithstanding Plaintiff's settlement with their employer Northern Natural Gas Company.

"WHEREFORE, Plaintiff renews his prayer against the Defendants as set forth in his petition."

Plaintiff's reply was filed on July 12, 1967. Apparently no further steps were taken in the litigation until May 17, 1968, when defendants filed a motion for summary judgment in which they alleged:

". . . [T]hat plaintiff executed a Compromise and Settlement Agreement on the 8th day of December, 1965, providing for the full release of their employer, Northern Natural Gas Company, a Delaware corporation, from all actions, claims and demands whatsoever arising out of or flowing from the accident described in plaintiff's petition. That the recovery by plaintiff of $17,500.00 paid to him by defendants' employer for said release operated so as to release these defendants from liability and that plaintiff has no legal grounds upon which to maintain this action for damages."

The motion for summary judgment was argued to the court on August 28, 1968. The court requested parties to furnish briefs and took the matter under advisement.

On December 10, 1968, the trial court filed a memorandum decision sustaining defendants' motion for summary judgment.

In its decision the trial court treated the compromise and settlement agreement as a release and stated that Northern, as the master with respect to defendants, was liable, if at all, under the basic doctrine of respondeat superior when the release was given and that its liability, if any, was derivative and secondary, whereas the liability of defendants was primary and that it was necessary to determine if the basis of liability had any effect on the release as a defense to the action. The trial court then reviewed Kansas cases and other authorities relating to releases and "covenants not to sue" as applied to a joint tort-feasor relationship or that of principal and agent or master and servant that existed.

The trial court concluded:

". . . [T]hat the release executed by the plaintiff to Northern released his cause of action against the defendants in the present case. There was but one wrong complained of by plaintiff, the negligence of Northern employees; the plaintiff is entitled to but one satisfaction for his injury, which he chose to recover by way of releasing Northern for an amount of $17,500; in doing so he extinguished a cause of action he, plaintiff, had against the present defendant[s]."

As we have indicated, defendants filed their motion for summary judgment on May 17, 1968, which was argued to the court on August 28, 1968, when the court granted the parties twenty days in which to file opposing affidavits and briefs. On November 5, 1968, plaintiff

filed two affidavits. Defendants promptly filed a motion to strike alleging the affidavits were not timely filed and did not present any new facts or material relating to the sole question raised in plaintiff's petition and reply which was the legal effect and operation of the settlement agreement. This motion was not heard or ruled on at the time. Thereafter, plaintiff filed his brief on December 3, 1968, and the court filed its memorandum decision on December 10, 1968. The court did not mention the affidavits or the motion to strike.

On December 12, 1968, the trial court filed a supplemental memorandum decision in which it overruled defendants' motion to strike the affidavits. The court noted the affidavits were filed out of time but ruled that "in order that the matter could be fully resolved, the court considered the affidavits." The court found that the affidavits contained matters which did not relate to, nor control, the question of law raised by defendants' motion for summary judgment.

Plaintiff's first point on appeal concerns the affidavits referred to.

The first affidavit was subscribed and sworn to by plaintiff on September 27, 1968. In substance it recited that plaintiff was assured by representatives of Northern that the release only released Northern and would in no way affect any claim plaintiff would have against any other person or corporation and that the representation was made more than once. Plaintiff also stated in the affidavit that it was his understanding that the amount of money agreed to was not near the compensation he was entitled to but that he would be able to pursue further recourse against any other party that might be liable for his injuries.

The second affidavit was subscribed and sworn to by plaintiff on October 22, 1968. In this affidavit plaintiff recited in more detail his hospital expenses, financial reverses suffered as a result of his injuries, and the circumstances surrounding his signing of the release. He stated that on December 8, 1965, he went to his doctor's office for a treatment and to have the dressings on his burns changed. While at the doctor's office he was contacted by two representatives of Northern who wanted to talk to him about a settlement of his claim with Northern. The two representatives took plaintiff to the motel where they were staying, where they bought plaintiff several beers, and discussed the settlement. Plaintiff stated the representatives told him $100 a day for the time he was in the hospital would be a fair settlement; that he did not need an attorney; and that the release would only release Northern and not any other person. Plaintiff also stated that he would not

have signed the release if the representatives had not told him that he was only releasing Northern.

For his first point on appeal, plaintiff asserts that the release was obtained by Northern by means of fraud and misrepresentation and that this contention is fully substantiated by his affidavits. Thus, a genuine issue of fact is raised which clearly eliminates the case as one subject to disposition by summary judgment.

In support of his position plaintiff cites many of our cases, including *Schneider v. Washington National Ins. Co.*, 200 Kan. 380, 437 P. 2d 798; *Supreme Petroleum, Inc. v. Briggs*, 199 Kan. 669, 433 P. 2d 373; and *Collins v. Meeker*, 198 Kan. 390, 424 P. 2d 488, to the effect that before a motion for a summary judgment may be rendered it must be shown conclusively that there is no genuine issue as to material facts.

If, as plaintiff claims, fraud and misrepresentation by Northern in obtaining the release became an issue, as a result of plaintiff's affidavits, then, of course, under the decisions cited the case was not subject to disposition by summary judgment.

Defendants claim the trial court erred in overruling their motion to strike the affidavits and in considering them because (1) the affidavits were filed out of time and (2) fraud was not alleged in any of the pleadings as required by K. S. A. 60-209 (*b*).

In its memorandum decision on defendants' motion for summary judgment the trial court stated the question presented in these words:

"1. The question presented and determining is if the release executed between Northern Natural Gas Company, the defendant's employer and the plaintiff, an employee of Dresser Engineering Company, has the legal effect of barring an action against the present defendants."

As we have previously indicated, in its supplemental memorandum decision, the trial court ruled the matters contained in the affidavits do not relate to nor control the question of law raised in defendants' motion for summary judgment. It appears the trial court's reasoning was that, since fraud and misrepresentation had not been pleaded and no request to amend had been made by plaintiff, there were no issues in the case pertaining to fraud or misrepresentation; therefore the only question in the case was the legal effect of the release.

From our examination of the record, we believe the view adopted by the trial court was correct.

In their answer defendants pleaded the settlement agreement as a defense and attached a copy as an exhibit. In his reply to defendants' answer plaintiff does not plead fraud and misrepresentation, but merely denied that the settlement agreement had the legal effect of releasing defendants and was not intended to release them.

As we have heretofore indicated, the reply was filed July 12, 1967; defendants' motion for summary judgment was filed eleven months later, on May 15, 1968, and argued to the court on August 28, 1968. There is no showing in the record of any attempt by plaintiff to amend his pleadings to include fraud and misrepresentation at any time during the pleading stage or at oral argument on the motion for summary judgment. After this case was argued before this court, on May 5, 1970, plaintiff filed a reply brief in which he states fraud and misrepresentation were argued to the trial court, but he made no claim that he ever requested leave to amend his pleadings to include fraud and misrepresentation.

There is no showing in the record that fraud and misrepresentation were ever argued or presented to the trial court and no mention thereof was made in either its memorandum decision or supplement thereto. Except for what is indicated in the affidavits, the only mention of fraud and misrepresentation, that we have discovered in the record, is contained in the specification of points on appeal.

Provisions of the code of civil procedure relating to the pleading of special matters are found in K. S. A. 60-209, subsection (b), of which provides:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. . . ."

The statutory requirement of pleading the particulars of fraud is supported by many Kansas decisions. (See Gard, Kansas Code of Civil Procedure Annotated, § 60-209 [b], p. 39; 1 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 209.2, p. 552; and cases cited in Hatcher's Kansas Digest [Rev. Ed.], Fraud & Deceit, § 34; and West's Kansas Digest, Pleading, § 8 [15].)

In his reply to defendants' answer plaintiff admits the execution of the settlement agreement, but denied "that the same has the legal effect of or was ever intended to release, any parties other than Northern. . . ." Given the most liberal interpretation such language cannot serve as a basis upon which to predicate a charge

of fraud and misrepresentation. It is a familiar rule of law in this jurisdiction that specific facts constituting fraud must be set out. (*McGill v. Kuhn,* 186 Kan. 99, 348 P. 2d 811; *Baker, Administrator v. Brial,* 185 Kan. 322, 341 P. 2d 987; and *Gorsage v. Steinmann-McCord & Co.,* 138 Kan. 400, 26 P. 2d 455.)

Fraud and misrepresentation were not pleaded; neither do we find any showing in the record that they were injected as issues by consent; nor can the belated affidavits be substituted for the absent allegations. In *Hoover Equipment Co. v. Smith,* 198 Kan. 127, 422 P. 2d 914, we held:

"An exhibit attached to a pleading cannot take the place of an allegation lacking in the pleading when such allegation is necessary to declare a legal claim of relief against an opposing party." (Syl. ¶ 3.)

We believe the same principle is applicable to plaintiff's attempt to use his affidavits to take the place of the allegations lacking in the instant pleadings.

The narrow issue was framed by the pleadings, and stated by the trial court, when submitted on motion for summary judgment. In this connection, in *Meyer, Executor v. Benelli,* 197 Kan. 98, 415 P. 2d 415, this court observed:

". . . A party cannot escape summary judgment on the mere hope that something may develop at the trial, or by remaining silent and later claiming additional facts supporting a defense." (p. 100.)

Probably the trial court would have permitted amendment by plaintiff if requested. We cannot speculate as to why plaintiff failed to ask leave to amend—whether by inadvertence or design.

Plaintiff cites the case of *Ware v. State Farm Mutual Automobile Ins. Co.,* 181 Kan. 291, 311 P. 2d 316, wherein plaintiff Ware and his wife sued defendant Insurance Company for damages allegedly sustained by plaintiffs by reason of a release of a claim for damages for the wrongful death of their son. The Wares alleged the release was secured through fraud and misrepresentations of defendant's agent. The *Ware* case was not an action for damages for injuries or wrongful death and is not germane to the instant case, except that the remedies of the defrauded party, where a release of a cause of action is procured by fraud, are set out as follows:

". . . (1) he may return the consideration paid for the release, thereby rescinding the transaction; (2) he may sue for a rescission and offer to return the consideration; or (3) he may waive his right to rescind and sue to recover any damages suffered by reason of the fraud perpetrated upon him. . . ." (p. 296.)

None of the three remedies is sought by plaintiff in the instant case, nor is Northern, who would stand in the shoes of the defendant in *Ware*, made a party to the action.

Since there was no issue relating to fraud and misrepresentation framed by the pleadings or injected by consent of the parties, and no other issue of fact asserted by plaintiff, it follows that there was no issue of material fact before the trial court.

We turn then to the legal effect of the "Compromise and Settlement Agreement"—the controlling question in this lawsuit.

Defendants contend it clearly appears to be a release. Plaintiff, on the other hand, suggests it could as readily be construed as a covenant not to sue.

The distinction between a covenant not to sue and a release of one tort-feasor has been said to be somewhat nebulous and difficult to define with exactness and precision. (*Western Spring Service Co. v. Andrews*, 229 F. 2d 413 (10th Cir. 1956). The effect of either as to the releasee is exactly the same—either may be pleaded in bar of the cause of action to which it relates. Generally, factors to be considered in the determination are the terms of the instrument, the words used, the amount paid, the substance of the agreement and the intention of the parties as manifested by the instrument. (73 A. L. R. 2d, Anno. P. 420.)

In the recent case of *Reynard v. Bradshaw*, 196 Kan. 97, 409 P. 2d 1011, this court was called upon to determine the legal effect of an instrument entitled "Release of all Claims" in an action based upon tort liability arising out of an automobile collision. We said:

". . . The legal effect of a document is not to be determined solely from its name although that may be taken into account. The first question, as it is in the construction of any written instrument, is, what was the intention of the parties? This is to be gleaned from the instrument itself and where that expresses the intent, the inquiry is ended. . . ." (p. 101.)

In applying Kansas law in the case of *St. Paul Mercury Indemnity Co. v. United States*, 201 F. 2d 57, (10th Cir. 1952), the United States Court of Appeals said:

"Moreover, under the law of Kansas, the effect of a release or discharge of one tort feasor with respect to the liability of another person is to be determined by the *intention of the parties as manifest by the instrument*. . . ." (p. 61.) (Emphasis supplied.)

See also *Milwaukee Ins. Co. v. Gas Service Co,*. 185 Kan. 604, 347 P. 2d 394; and *Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 309 P. 2d 692.

Looking at the instrument in question, within the framework of the guidelines stated in *Reynard,* we believe the language used clearly expresses the intention of the parties. The sum received was substantial and was accepted in full settlement and satisfaction and for the full release and discharge of all actions, claims and demands whatsoever that may now or hereafter exist against Northern on account of all injuries to the person of plaintiff. Such language clearly constitutes a release rather than a covenant not to sue.

While the release names no party other than Northern, neither does it expressly reserve any rights to plaintiff against these defendants or any other parties. In *City of Topeka v. Brooks,* 99 Kan. 643, 164 Pac. 285, where a release of one partner expressly reserved the right to proceed against the other, the rule is stated in these words:

". . . That rule is, that the intent of the parties to the release controls, and where the creditor or injured party expressly reserves the right to pursue the other wrongdoer, the release of one can not be set up as a defense by the other. The compromise or satisfaction is regarded as a covenant not to sue, instead of a technical release. . . ." (p. 647.)

The pleadings and the release in this case do not show whether the liability for which Northern was released was predicated on liability as a joint tort-feasor or as a master under the doctrine of respondeat superior. In fact as to Northern there are no allegations of liability or of any tortious act that is independent and concurrent with or successive to the wrongful act alleged to have been committed by one or more of these defendants.

We agree with the view adopted by the trial court that Northern's liability could only stem from that of a master under the doctrine of respondeat superior, since the only wrong alleged was the negligence of defendants.

In determining the effect of the release in this case, we think the same result is compelled whether the status of Northern be that of a master or a joint tort-feasor, since there is only one wrongful act and no allegation of an independent concurrent or successive wrongful act by Northern.

Based on the simple reasoning that an injured person can have but one satisfaction for the same wrong, this court has long adhered to the familiar rule that an unconditional release by the injured party of one joint tort-feasor will release all.

A covenant not to sue was involved in the case of *Jacobsen v. Woerner*, 149 Kan. 598, 89 P. 2d 24; however, rules pertaining to the effect of a release of a joint tort-feasor were extensively reviewed:

"It is well settled that an injured person can have but one satisfaction for the same wrong. (*Meixell v. Kirkpatrick*, 29 Kan. 679; *Skaer v. Davidson*, 123 Kan. 420, 256 Pac. 155; *Keonn v. Young*, 129 Kan. 563, 283 Pac. 511.)

"It is also an established rule that an unconditional release by the party injured of one joint tort-feasor will release all. (*Westbrook v. Mize*, 35 Kan. 299, 10 Pac. 881; *Skaer v. Davidson*, supra; *Rasnic v. City of Wichita*, 126 Kan. 98, 267 Pac. 21; *Paris v. Crittenden*, 142 Kan. 296, 46 P. 2d 633.)

"It is equally well established that a covenant not to sue one joint tort-feasor does not release other joint tort-feasors. (*Eden v. Fletcher*, 79 Kan. 139, 98 Pac. 784; *City of Topeka v. Brooks*, 99 Kan. 643, 164 Pac. 285; *Feighley v. Milling Co.*, 100 Kan. 430, 165 Pac. 276; *Scott v. Fair Association*, 102 Kan. 653, 171 Pac. 634.)" (p. 601.)

It should be kept in mind that according to the pleadings in the instant case, the injury was caused by one wrongful act, rather than by alleged independent concurring or successive torts as in *Milwaukee Ins. Co. v. Gas Service Co.*, supra, or where a wrongful act is not done jointly, but is the deed of one or the other and not of both persons from whom compensation is sought, as in *Jukes v. North American Van Lines, Inc.*, supra.

The rule with respect to joint tort-feasors as it bears on the relationships of master and servant or principal and agent is discussed in *Jacobson v. Parrill*, 186 Kan. 467, 351 P. 2d 194, wherein it was said:

". . . It has been held that under that doctrine the liability of the master to a third person for injuries inflicted by a servant in the course of his employment and within the scope of his authority, is derivative and secondary, while that of the servant is primary, and absent any delict of the master other than through the servant, the exoneration of the servant removed the foundation upon which to impute negligence to the master. (Citing cases.)

"While this court has held that a master may be jointly sued with the servant for a tort of the latter committed within the scope of his authority of employment (*Dowell v. Railway Co.*, 83 Kan. 562, 112 P. 2d 136; *Duensing v. Leamon*, 152 Kan. 42, 102 P. [2d] 992; *Rush v. Concrete Materials & Construction Co.*, 172 Kan. 70, 238 P. 2d 704; *Russell v. American Rock Crusher Co.*, 181 Kan. 891, 317 P. 2d 847), they are not joint tort-feasors in the sense that they are equal wrongdoers without right of contribution, for the master may recover from the servant the amount of loss caused to him by the tort, including any sum he has been required to pay a third person on account of it (*Fenly v. Revell*, 170 Kan. 705, 228 P. 2d 905); such payments made by the master, in the absence of fault on his part are, not made by him as a wrongdoer, but by reason of his obligation to answer for the act of the servant. . . ." (p. 473.)

In *Jacobson* it was held that satisfaction of a judgment rendered against a servant releases the derivative liability of the master. This holding was accepted as a precedent in *Wilkerson v. Lawrence*, 193 Kan. 92, 391 P. 2d 997, wherein a trial court's judgment, that a principal was exonerated of liability for the wrongdoing of his agent by the plaintiff's covenant not to sue the agent, was affirmed.

In *Simpson v. Townsley*, 283 F. 2d 743, (10 Cir. 1960); 92 A. L. R. 2d 526, the Kansas law was construed to be that an employer whose liability is predicated on the doctrine of respondeat superior is absolved by a contract by the injured person not to sue the employee.

In the *Jacobson, Simpson* and *Wilkerson* cases the release ran from the injured person to the servant or agent, whereas here the release is to the master. However, the reasoning used in those cases in absolving the master or principal from liability, by reason of the release of the servant or agent, is the same as that used in the great majority of cases from other jurisdictions which hold that in the absence of a specific statute a valid release of one of the parties to a master-servant relationship operates as a release to the other.

We find this statement in 35 Am. Jur., Master and Servant, § 535:

"According to the great weight of authority, where both master and servant are liable to a third party for a tort of the servant, a valid release of either master or servant from liability for the tort operates to release the other, . . ." (p. 963.)

Many other cases from other jurisdictions are found in 126 A. L. R., Anno. p. 1199, which is superseded by 92 A. L. R. 2d, Anno. p. 533, wherein the author states at page 537:

"Most of the cases decided in the absence of a specific statute support the view that a valid release of one of the parties to the master-servant or principal-agent relationship releases the other. . . ."

See also 76 C. J. S., Release, § 50 (*b*), pp. 688, 689.

We believe the trial court correctly determined the legal effect of the release and since the pleadings left no genuine issue of any material fact in controversy, summary judgment for the defendants was properly rendered.

The judgment is affirmed.