MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. DAISY McWHERTER, *Administratrix*.

#### No. 10569.

1. RELEASE OF ONE ALLEGED WRONGDOER—*not in fact guilty, does not release another who was real wrongdoer.*   The rule that a settlement by and discharge of one of two or more joint wrongdoers operates as a discharge of both has no application unless both are guilty of the wrongful act.   A settlement with and discharge of one not in fact guilty will not affect the liability of the wrongdoer.

2. DISMISSAL NOT A BAR—*when order expressly states it is without prejudice.*   The dismissal of an action, by an order of the court which in terms provides that it shall be without prejudice, does not constitute a bar to a future action.

3. COLLATERAL ATTACK ON LETTERS OF ADMINISTRATION—*not permitted for personal representative's minority or subsequent removal from state.*   Letters of administration granted to a minor are not void, nor will the removal of the administratrix from

the State operate *ipso facto* as a revocation of the letters. Neither the fact of her minority or of her removal will constitute a defense in an action prosecuted by her as administratrix.

Error from Bourbon District Court. J. S. West, Judge. Opinion filed May 7, 1898. *Affirmed.*

*T. N. Sedgwick*, for plaintiff in error.

*W. P. Dillard, W. W. Padgett* and *J. I. Sheppard*, for defendant in error.

ALLEN, J. The receivers in charge of the M. K. & T. Railway Company entered into a contract with the Union Bridge Company for the construction of the superstructures of certain iron and steel bridges, among which was one across the Neosho River, near Osage Mission. The contract contained, among others, the following provisions :

"*Third.* The work herein specified and in the specifications and the plans and drawings to be prepared in accordance therewith, shall be executed under the direction of the superintendent of bridges and buildings of the parties of the second part, as aforesaid, or his assistants ; and the superintendent of bridges and buildings shall have the power to reject all work and material that shall not be in accordance with the strain sheets and specifications and with the spirit of this agreement."

" *Seventh.* It is hereby mutually agreed that if any labor is done or material furnished by either party to this contract to the other, that the same shall be paid for by the parties receiving the same, at the actual cost thereof to the parties doing or furnishing the same. Bills shall be rendered monthly for all such labor and material, and settlements therefor shall be made independently of the payments on this contract and by separate vouchers."

" *Twelfth.* The parties of the second part shall furnish the lower false work in place and the material necessary and proper for the erection of the new spans, and shall remove and pile up the old bridges before

the erection of the new ones, and shall remove the false work after the erection of the spans. They shall also furnish and put in place the ties and guard rails, and do all the necessary masonry pertaining to the bridge seats."

Before the construction of this bridge, the Railway Company regained possession of the road from the receivers; and work under the contract was continued in accordance with the terms of the contract made by them. Adam McWherter was employed by the Bridge Company. Two gangs of men were employed on the work at the same time. The gang of the Bridge Company was under Rockwell, as general foreman, and Porter, as gang foreman. The railroad gang was in charge of W. R. Gilbert, as foreman. As the new bridge was constructed, the old one, which was in use for the passage of trains, was removed in sections corresponding with the sections of the new structure. The Railroad Company had constructed the false work on which were placed what are termed pony bents, four to four and a half feet high, supporting the stringers on which the track rested. These stringers were made of large timbers eight by sixteen inches in dimensions, bolted together in pairs. McWherter was directed by his foreman to go with others and help remove the old bridge. They first removed the iron and ties. He then took his place on the false work, with fifteen or twenty other men, part of whom belonged to the bridge company gang and the others to the railroad gang. Mr. Gilbert, the Railroad Company's foreman, who stood at one end of the part of the structure they were about to remove, directed them to roll one of the stringers off at the side and let it fall below. This was done. He then told them to roll the other the same way, and let it go below. The men obeyed his direction by putting their hands against the stringer and rolling it. As they did so,

one end, where it had been sawed in two and which had rested on a prop, dropped from the prop and caused one of the bents also to fall, striking McWherter and knocking him off the false work to the water below. From the injuries so sustained he died the same day.

This action was brought by his daughter, Daisy McWherter, as administratrix of his estate. In her petition she alleges that her father's death was caused by the negligence of the foreman; that the stringer had been sawed off, as he well knew, of which fact the deceased was not informed, nor could he from the position he occupied see that it was sawed off and liable to fall; that when it was rolled over it fell, and it, and the bent on which it rested, fell on McWherter, knocking him from the floor on which he stood to the ground and water below, thereby causing his death. To the petition the defendant answered denying generally the matters stated in the petition, except those directly admitted. The execution of the ,contract with the Bridge Company by the receivers, and the return of the property to the Railroad Company, were admitted; and it was admitted that McWherter was an employee of the Bridge Company. It was then alleged that R. E. McWherter, the widow of the deceased, had presented to the Bridge Company a claim for the death of her husband through the negligence of the Bridge Company and its employees; that said claim had been settled, and a written agreement entered into, discharging the Bridge Company from all liability therefor in consideration of the payment of two hundred and fifty dollars. A copy of the agreement was attached to the answer, and it contains a recital to the effect that she claimed that the death of her husband was caused by the negligence of the Bridge Company, and that they denied that it was

so caused ; and that, for the purpose of compromising all differences between them, and in consideration of two hundred and fifty dollars, she released them, and all their servants and employees, from all claims on account of the death of said McWherter. It also contains this clause :

"This release shall not be construed to in any way affect or impair any right or claim which the party of the first part may have against the Missouri, Kansas & Texas Railroad Company, its agents, servants, or employees."

It was claimed by the Railroad Company that this settlement, having been made by the widow before the appointment of an administratrix, operated as a settlement and discharge, not only of the Bridge Company but of the Railroad Company as well. As a further defense, the answer also alleged that R. E. McWherter brought an action against the Railway Company for the identical claim sued on by the plaintiff in this case ; that after a jury had been impaneled to try the case, and a witness had been called on to testify, the defendant objected to the introduction of any testimony, on the ground that the written release of the Bridge Company above mentioned operated as a complete discharge of the liability of the defendant ; that the objection was sustained by the court and the action thereupon dismissed. A copy of the journal entry in that case is attached to the answer in this, and shows that " the court dismissed said action without prejudice at the cost of the plaintiff." The answer also alleges that the plaintiff has no legal capacity to sue ; that she has not been legally appointed administratrix ; that the probate court had no jurisdiction to appoint her ; that she had no legal capacity to receive an appointment of administratrix, being under the age of eighteen years at the time of her appointment,

and a non-resident of the State of Kansas. Other matters of defense are also stated, which it is unnecessary to refer to. The plaintiff replied with an unverified general denial of the new matter contained in the answer. When the case was called for trial, the defendant objected to the introduction of any testimony, on the ground that the defendant was entitled to judgment on the pleadings. The court overruled the objection, and this ruling is assigned as error.

It is contended that the petition fails to state a cause of action; that McWherter was not an employee of the Railroad Company; that under the contract between the receivers and the Bridge Company the work in which McWherter was engaged at the time of his injury was the work of the Bridge Company, and not that of the Railroad Company; that whatever risk attended the work was patent, and was voluntarily assumed by McWherter; that he knew that the stringer must have been sawed off, otherwise it would have been impossible to move it; that he was sent to this work by the foreman of the Bridge Company, and that no ground of liability on the part of the Railway Company was stated. There is no merit in this contention. Whether McWherter is to be regarded as a servant employed and paid by the Railway Company, or not, is unimportant. At the time of his injury he was lawfully performing labor under the direction of the Railroad Company's foreman. It was not his duty to direct the manner in which the work should be done; nor was he in any manner responsible for the safety to himself and others of the conditions under which they were working. It does not appear that he was in a position where he could see where the timber had been sawed, or that he had or ought to have had knowledge of the consequences that would follow rolling the stringer over. It was Gilbert's place to know that

the men could obey his directions with reasonable safety, before giving them the order to roll the stringer over. The company must respond for his negligence.

The next contention is that a settlement with one of two joint wrongdoers is a discharge of both; that in this case the Bridge Company and the Railroad Company were engaged in the joint enter-

1. Release of alleged wrong-doer does not release real wrongdoer.

prise which resulted in McWherter's death; that a settlement having been made with the Bridge Company, the Railroad Company also is discharged. We shall assume, without expressing any opinion as to correctness of the assumption, that the plaintiff, as administratrix, would be barred by any settlement made by the widow that would bar an action brought by her. The soundness of the general rule that a settlement with one of two joint tortfeasors ordinarily discharges both, is recognized. *Westbrook v. Mize*, 35 Kan. 299, 10 Pac. 881. In *Leddy v. Barney* (139 Mass. 394), it was held that a release by A given to C is a bar to an action against B for the same cause, whether C was liable or not; that the mere fact of making the claim against C, coupled with the satisfaction of it, was sufficient to release all who might be liable; that this view is supported by *Leither v. Philadelphia Traction Co.*, 125 Penn., 17 Atl. 338, and *Tomkins v. Clay Street Rld. Co.*, 66 Cal. 163. On the other hand, in the case of *Turner v. Hitchcock*, 20 Ia. 310, it was held that "a release of a person as a joint trespasser who is not in fact liable to the releasor does not destroy the right of action of such releasor against those who are liable." To the same effect are the cases of *Bloss v. Plymale*, 3 W. Va. 393; *Wilson v. Reed*, 3 John. 175; *Wardell v. McConnell*, 25 Neb. 558; *Snow v. Chandler*, 10 N. H. 92; *Bell v. Perry*, 43 Ia. 368; *Owen v. Brockschmidt*, 54 Mo. 285; *Pogel v. Meilke*, 60 Wis. 248. In the case

of the *Kentucky & Indiana Bridge Co. v. Hall*, 125 Ind. 220, it was held :

"The execution of a release by the plaintiff to the railroad corporation which employed him would not act as a release of the bridge corporation sued, if from the evidence the jury might conclude that the corporation to which the release was executed was in no way responsible for the accident."

We concur in the view taken by the authorities last cited. The reason of the rule which renders the acceptance of satisfaction from one of two or more joint tort feasors a discharge as to all, is that the wrong is single and entire, and the injured party is entitled to one and only one satisfaction, no matter how many parties may have joined in the act. As a general rule, the nature of the case does not admit of an apportionment of the damages among the wrongdoers, but they are liable jointly and severally for the whole. When the wrongful act is not done jointly by the persons from whom compensation is sought, but is the deed of one or the other and not of both, we are unable to perceive on what principle a settlement with and discharge of one affects the cause of action against the other. Certainly it is not by way of estoppel, for the party not released is no party or privy to the arrangement, and has no joint interest with the one discharged. In this case there was ample evidence to show that the neglect was that of the Railroad Company alone ; and the release executed by Mrs. Mc-Wherter expressly stipulates that it shall not operate as a discharge of the Railroad Company. Conceding that the claim made against the Bridge Company was unjust and ill founded, we know of no legal principle on which the settlement can be made available to the Railroad Company.

The claim that the dismissal of the case brought by

Mrs. McWherter against the company determines the controversy and constitutes a bar to this action is expressly negatived by the terms of the order itself, which shows, that "the court dismissed said action without prejudice."

*2. Dismissal not a bar, when.*

Adam McWherter was killed on the seventh of December, 1891. Letters of admistration were issued to the plaintiff on the seventh of November, 1893, and this suit was commenced on the twentieth of November, following. At the time of her appointment, Daisy McWherter was not yet eighteen years of age, and was a resident of Bourbon County. She afterwards married, and, at the time of the trial, was living with her husband at Nevada, Missouri. Her appointment was never revoked. It is insisted that she was without authority to prosecute the suit as administratrix, for the reasons, *first*, that being a minor she could not lawfully be appointed; *second*, that the statute expressly provides that letters shall in no case be granted to a non-resident of the State and that when an administrator becomes a non-resident the probate court shall revoke his letters. It appears in this case that before her appointment the plaintiff had been granted the rights of majority, by proceedings in the district court; but it is contended that this merely authorized her to enter into contracts as if she were an adult, and did not confer any added rights with reference to an appointment as administratrix.

*3. Collateral attack on letters of administration not permitted, when.*

It is further insisted that the statute authorizing district courts to confer on minors rights of majority is unconstitutional because it attempts to give legislative powers to the courts. We deem it unnecessary to make extended comments on any of these claims, or to consider whether they would have availed in a direct attack in the probate court on the letters of ad-

23—59 KAN.

ministration. The letters were in the plaintiff's hands at the time the action was tried, and no proceedings had ever been instituted to cancel or revoke them. The plaintiff was then more than eighteen years of age. She was administratrix, in fact, and her authority to act was not open to collateral attack by the defendant. *Davis v. Miller, Adm'r*, 106 Ala. 154; *Succession of Lyne*, 12 La. An. 155; *State ex rel. v. Rucker*, 59 Mo. 17; *The State v. Smith*, 71 Mo. 45. Neither is there any force in the suggestion made that the intestate left no estate to be administered, or that the appointment of an administrator was not made in due time.

As before remarked, there was sufficient evidence to sustain the verdict. We find nothing substantial in the complaint made because the trial court declined to permit counsel for the defendant to argue the demurrer to the testimony. Nor do the criticisms on the instructions given to the jury merit discussion. The part copied into the brief fairly and correctly states the law.

The judgment is affirmed.