No. 29,069.

W. H. KEOWN, *Appellant,* v. R. CLAUDE YOUNG, *Appellee.*

(283 Pac. 511.)

564

*L. D. Moore,* of Winfield, and *C. L. Swarts,* of Arkansas City, for the appellant.

*Hattie Franey,* of Arkansas City, *J. A. McDermott* and *S. C. Bloss,* both of Winfield, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for malpractice against a physician and surgeon who treated plaintiff for injuries sustained by him as a result of his being struck by a locomotive engine. As a bar to the action defendant pleaded that plaintiff had previously sued the railway company for his injuries and had settled that action. Plaintiff's reply contained a general denial, but in it plaintiff admitted the filing of the former action, the settlement of it, and the execution of the release referred to in the answer. Defendant then moved for judgment on the pleadings. This motion was sustained, and plaintiff has appealed.

The sole question before us is whether the damages now sought to be recovered were claimed, or could have been claimed, in the former action, and were therefore settled by the settlement of that case. This must be determined by the pleadings, which disclose substantially the following: On October 23, 1924, plaintiff was driving his truck along a street of Arkansas City, and at a point where the street crosses the industrial track of the St. Louis-San Francisco Railway Company one of the engines of the railway company struck the truck which plaintiff was driving, seriously injuring the plaintiff. Immediately after the casualty plaintiff was taken to the hospital, and the defendant was employed to treat him. The pleadings contain conflicting allegations as to who employed defendant for that purpose. Plaintiff alleges that he employed the defendant, while the defendant in his answer alleges that the railway company employed him. Since the judgment was rendered against plaintiff on the pleadings, we must accept the allegations of plaintiff's petition on any matter controverted by the pleadings.

Plaintiff was in the hospital for treatment for some time and was discharged from there in 1924, the exact date not being given in the pleadings. On April 29, 1925, plaintiff filed an action against the St. Louis-San Francisco Railway Company in which he charged negli-

gence on behalf of the railway company which caused his injury, and as to the extent of his injury alleged:

". . . that his right leg was crushed and mangled between the hip and knee, the bones thereof being driven through the flesh and skin; that his said right leg was further strained, bruised and skinned from the knee down to and including the foot thereof; that his hips and back were bruised and suffered injury to his internal organs and especially his kidneys; that he suffered a severe shock to his nervous system; that he endured great physical and mental pain and suffering; that the bruises and lacerations of his said leg below the knee and on the foot have developed ulcers; that he has lost the partial use of his said right foot, all of which injuries resulting from the acts of the defendant aforesaid."

And further alleged:

"That at the time of said injuries plaintiff was a healthy and able-bodied man — years old, earning a weekly wage of $30 per week; that by said injuries hereinbefore described he has been permanently injured in health and ability to earn; that he has been put to great expense in doctors' fee, hospital bills, nursing charges and other incidental charges, has suffered loss of time and income; that he has endured great and excruciating physical and mental pain and suffering; that from the date of said injury to the filing of this petition he has lost in earnings $572; that his expense for doctors' services is $200; that his expenditures for hospital services is $250; that for nursing his expenses were $100; for incidental expenses $100, or a total expense and loss of wage to this date of $1,222; that for his permanent bodily injuries, his physical and mental pain and suffering he has been hurt and damaged in the further sum of $10,000; that all of the aforesaid losses and expenditures, hurts and damages were and are the direct and proximate result of the negligent acts of the defendant, its agents, servants and employees as hereinbefore set out, and for which plaintiff is entitled to recover from the defendant, in the sum of eleven thousand two hundred twenty-two dollars."

The railway company removed the action to the federal court. On February 25, 1926, plaintiff and the railway company compromised that case and the plaintiff executed a general release which recited that whereas plaintiff was injured October 23, 1924, on a line of railroad operated by the railway company, under circumstances which he claimed rendered the company liable in damages, although such liability was denied, and being desirous to compromise, adjust and settle the entire matter—

"Now, therefore, in consideration of the sum of seven hundred fifty and no-100 dollars ($750), to me this day paid by said company in behalf of itself and all companies whose lines are operated by it, I do hereby compromise said claim and do release and forever discharge the said company and all companies whose lines are leased or operated by it, its agents and employees, from any and all liability for all claims for all injuries, including those that may hereafter develop as well as those now apparent, and also do release and discharge them of all suits, actions, causes of action and claims for injuries

and damages, which I have or might have arising out of the injuries above referred to, either to my person or property, and do hereby acknowledge full satisfaction of all such liability and causes of action."

Plaintiff was paid by a draft to which was attached the following statement, which was signed by him:

"For, and in full release, discharge and satisfaction of all claims, demands and causes of action arising from or growing out of any and all injuries that I, W. H. Keown, may have sustained, including those that may hereafter develop as well as those now apparent when the bread delivery truck which I was driving on West 5th avenue in the city of Arkansas City, Kansas, was struck by a switch engine of the St. Louis-San Francisco Railway Company on October 23, 1924.

"It being distinctly understood and agreed that this amount is settlement in full for all matters sued for in a certain suit now pending in the United States district court, district of Kansas, second division, in which W. H. Keown is plaintiff and the St. Louis-San Francisco Railway Company defendant, said suit being for the sum of $11,222, this settlement to cover all expense incurred, including all hospital bills, medical and surgical bills and attorney's fees.

"Said suit to be dismissed with prejudice at cost of defendant.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"In consideration of the payment of the sum of seven hundred fifty and no/100 dollars ($750) the receipt of which is hereby acknowledged, we hereby fully and forever release, discharge and acquit St. Louis-San Francisco Railway Company, of and from all suits, actions, causes of action, claims and demands of every class or character in anywise accruing to us on account of the matters and things above more fully set out."

Plaintiff's action against the railway company was dismissed with prejudice. Thereafter and on October 25, 1926, plaintiff filed his present action, and filed his second amended petition therein May 5, 1928. In this he alleges that on October 23, 1924, plaintiff was struck by a locomotive engine "and the femur of his right leg broken at a point about three or four inches above the knee, and the adjacent parts and tissues broken, mangled, and injured"; that he employed defendant to treat his injuries; that after defendant had reduced the fracture of his leg, and as part of the treatment given plaintiff for his injury, defendant "placed the plaintiff in bed and attached his injured leg to an apparatus consisting in part of a weight connected with cords and pulleys, designed and intended to produce traction upon said leg, from the point where the same was broken, toward the foot thereof"; that defendant attached plaintiff's injured leg to the apparatus mentioned by placing the foot upon a portion of the apparatus and by fixing strips of adhesive tape bandages around and over the foot and ankle and portions of

the apparatus, and swung the foot and leg by means of the apparatus "in such manner as to cause great pressure to the upper portions of said foot, instep, and heel, and to the ankle thereof, thereby cutting off and interfering with the blood and nerve supply thereof," and that he was negligent in so doing; that he left the same in that condition for nine or ten days without inspection or examination, and that he was negligent in not making more frequent inspections; that in attaching plaintiff's foot to the apparatus the foot was not placed at the proper angle, and that defendant was negligent in so placing it; "that the nerves of the plaintiff's leg, ankle, and foot were injured and damaged, and the natural function thereof injured and destroyed either at the time his leg was broken as aforesaid or during the defendant's treatment and manipulation of the plaintiff's injured leg"; that defendant, by reasonable care and diligence, could have discovered that fact, and was negligent in not doing so. It was averred that defendant, by his negligence, "caused said leg and the foot and toes thereof to become and be partly paralyzed and caused the great toe thereof to be lost and destroyed by amputation, and caused and produced poisonous and suppurating sores on said foot and toes, and caused the right ankle joint to lose its mobility and to become and be permanently fixed and held in an *equinus* position, and his leg between the knee and ankle to be atrophied and shrunken, and his said leg, foot and toes misshapen and deformed. That the said defendant, by his negligence and incompetency as aforesaid, has caused the plaintiff great physical and mental pain and suffering, and great loss of time, to wit, six months, of the value of one thousand dollars, and that his said injuries are permanent and will in the future cause him great mental and physical pain and suffering and loss of time, and that his capacity for work and business greatly and permanently impaired, in all to his damage in the sum of ten thousand dollars."

Without restating the claims of plaintiff in the two actions it will be noted that in the action brought by him against the railway company, which action was brought several months after he had been discharged from the hospital and after the defendant in this case had ceased to treat him, he sought to recover for loss of time and ability to earn, the expenses incurred, physical and nervous injury, pain and suffering to the time of filing the action, and for future pain and suffering and permanent injury, including, of course, his inability to earn in the future. In short, plaintiff contended that his

physical and nervous condition as it existed at the time he brought that action, as well as pain and suffering incident to the injury he had received, and his then condition, resulted from injury which he sustained at the railroad crossing, for which the railway company was liable to him because of its negligence which caused the injury. In the present action against the physician plaintiff seeks to recover for the identical condition, including loss of time, pain and suffering, and permanent injury. It is true that in this action he alleges that a part of his present condition resulted from the negligence of the physician in that had the physician possessed and used the knowledge, skill and care which he should have possessed and used the injuries which he received at the railroad crossing casualty would have been repaired or cured, either entirely, or to an extent greater than they were. But as to some of the injuries which he now sustains he is unable to state in the present action whether they were caused by the original casualty or by the negligence of this defendant. It will be observed that in the present action defendant is not charged with causing any new hurt or injury to plaintiff. The sole complaint made is that the physician, because of his negligence as alleged, did not repair or improve the injury caused the plaintiff by the railway company as well as he would have repaired and improved the same had he possessed the knowledge and skill which he should have possessed, and had he given to plaintiff the attention which he should have given.

In support of the judgment of the court below the appellee contends that in his action against the railway company plaintiff sought to recover, and could have recovered (had he established the negligence of the railway company which caused his injury), all the damages he now seeks to recover in this action. This contention must be sustained. The general rule is stated in 8 R. C. L. 449, as follows:

"It is a general rule that if an injured person uses ordinary care in selecting a physician and in the employment of other means to effect a cure, the law regards an injury resulting from mistakes of the physician or his want of skill, or a failure of the means employed to effect a cure, as a part of the immediate and direct damages which naturally flow from the original injury. There is a very limited number of cases, however, to the effect that the defendant is not liable for the increased damages caused by the unskillfulness of the physician, even though reasonable care was used in selecting him; but these are apparently not supported by reason, and are clearly against the weight of authority. It follows that one injured is not bound to employ the

highest medical skill which may be found, nor does the law make him an insurer that the physician he employs will be guilty of no negligence, error of judgment, or want of care. Where, therefore, ordinary care and prudence are exercised by one injured, whatever the outcome, he may recover for the entire injury sustained, for in the law the liability to mistakes in curing is then incident to the injury."

And in 6 Thompson on Negligence, § 7211, as follows:

"An injured person exercising ordinary care in the employment of a physician to treat his injury may recover for aggravation of the injury resulting from the negligence or mistaken treatment of his physician, these enhanced injuries being generally regarded by the courts as direct results of the original injury."

In *McIntosh v. Railway Co.*, 109 Kan. 246, 198 Pac. 1084, it was held:

"It is the duty of a person injured through the negligence of another to use reasonable diligence in securing medical or surgical aid, and he cannot recover for suffering or ailment resulting from his own failure to exercise such diligence; but if that degree of care is used by him in the selection of physicians or surgeons, and their lack of due care and skill in treatments or operations aggravates or increases the original injuries, such increase is not deemed to be the fault of the injured person, but is regarded in law as a part of the original injury, which reasonably ought to have been anticipated by the original wrongdoer, and for which he is responsible." (Syl. ¶ 1.)

This holding is in accord with the authorities: *Tex. & Pac. Ry. v. Hill*, 237 U. S. 208; *O'Quinn v. Alston*, 213 Ala. 346; *Dewhirst v. Leopold*, 194 Cal. 424; *Wright v. Blakeslee*, 102 Conn. 162; *Rohmer v. Anderson*, 189 Ill. App. 274; *Suelzer v. Carpenter*, 183 Ind. 23; *Hooper v. Bacon*, 101 Me. 533; *Gray v. Boston Elevated Railway*, 215 Mass. 143; *Reed v. City of Detroit*, 108 Mich. 224; *Fields v. Mankato Electric Traction Co.*, 116 Minn. 218; *Smith v. K. C. Ry. Co.*, 208 Mo. App. 139; *Seeton v. Dunbarton*, 73 N. H. 134; *Wagner v. Mittendorf*, 232 N. Y. 481; *Smith v. Missouri, K. & T. R. Co.*, 76 Okla. 303; *Galveston, H. & S. A. Ry. Co. v. Miller*, 191 S. W. 374 (Tex.); *Yarrough v. Hines*, 112 Wash. 310; *Fisher v. Milwaukee, E. R. & L. Co.*, 173 Wis. 57.

Hence it may be stated as a general rule that when one sustains personal injuries because of the negligence of another, and uses due care in selecting a physician to treat his injuries and in following the advice and instructions of the physician throughout the treatment, and his injuries are aggravated, or a poor result obtained by the negligence of the physician, the law regards the negligence of the one who caused the original injury as the proximate cause of

damages flowing from the negligence of the physician, and holds him liable therefor. The original wrongdoer would not be held responsible, of course, if the injured person were negligent in selecting a physician to treat his injuries, or if the injured party neglected to follow the advice and instruction of the physician regarding the treatment and damages resulted therefrom, but there are no allegations of this kind in the petition in this case—indeed, such allegations, if made, would perhaps defeat plaintiff's recovery, for they would tend to show that the injuries of which plaintiff complained .resulted from his own negligence. Neither would the rule apply if through his negligence the physician caused a distinctly new injury, as in *Purchase v. Seelye,* 231 Mass. 434, where a railway company, by its negligence, caused hernia to an employee; the surgeon through a mistake in the identity of the patient cut him open on the wrong side. In an action against the surgeon for an unauthorized operation it was held that the surgeon, and not the railway company, was liable. The court took care to distinguish the case from those above cited. There is no allegation in the petition which makes this case applicable.

The result of the above analysis is that plaintiff in his action against the railway company could have recovered all the damages sustained by him, whether they arose directly from the casualty at the railway crossing or from the fact that the physician whose negligent treatment did not produce as good a recovery as due care on his part would have produced. Had he recovered such damages in full it is clear this action would not lie.

There remains to be considered the effect of his settlement with the railway company. He did settle with the railway company for .$750. By the terms of the instrument by which that settlement was effected, which terms having heretofore been set out need not be here repeated, it is clear that he settled for everything that he could have recovered in the action from the railway company. It necessarily follows that if in that action he could have recovered from the railway company for all the damages caused to him directly by the injury, including the failure of the physician, through his negligence, to bring about a complete, or more nearly complete, recovery, he necessarily settled for damages resulting from the negligence of the physician. It is fundamental that one who has been paid, or has settled, for all injuries sustained cannot maintain a second action for such injuries. In *Martin v. Cunningham,* 93

Wash. 517, plaintiff was injured in a train wreck and was attended by a physician. After he had settled with the railroad company and released it from all liabilities to him arising out of the accident he brought suit to recover from the physician for alleged negligent treatment. The court said:

"Conceding malpractice on respondent's part, as charged by the complaint, we think appellant is precluded from a recovery against him. The railway company was liable not only for the injury and resulting suffering of appellant, but also for the malpractice of the attending surgeon and for the expenses of medical attendance. Having that liability in view, the company settled with him, paying him a substantial sum for a release from further liability. At the date of the release the appellant had already suffered from the alleged malpractice and had employed another surgeon to remedy it, to whom he had paid $500 for the service. These were all matters that could be enforced against the railway company under its liability for damages, and the settlement was clearly made with a view to covering all those elements of damages. They were known to exist by the parties to the release, and the settlement was made with reference to them. The release having been made in full satisfaction of all existing claims, precludes the appellant from bringing a second action for malpractice against the surgeon, occupying somewhat the position of a joint tort-feasor, to recover double compensation for what he has already been satisfied. It is a well-settled doctrine of the law that complete satisfaction for an injury, received from one person in consideration of his release, operates to discharge all who are liable therefor, whether they be joint or several wrongdoers." (p. 520.)

In *Hooyman v. Reeve*, 168 Wis. 420, it was held:

"A release, executed and delivered to the employer by an injured employee in consideration of the payment of a certain sum, acknowledging full satisfaction 'of all claims, accrued or to accrue, in respect of all injuries or injurious results, direct or indirect, arising or to arise from' the accident in question, covered and included a claim for injurious results alleged to have been caused by malpractice of a physician who was employed at the time of the injury to treat said employee. . . . Enhanced injuries resulting from the negligence or mistaken treatment of a physician employed, in the exercise of ordinary care, to treat an injured person, are generally to be regarded as direct results of the original injury."

Other cases to the same effect are collected in the notes, 50 A. L. R. 1108.

Appellant cites the cases of *Railway Co. v. McWherter*, 59 Kan. 345, 53 Pac. 135, and *Edens v. Fletcher*, 79 Kan. 139, 98 Pac. 784, in support of the argument that the release of one tort-feasor does not necessarily release the other, and also calls our attention to the annotation in 50 A. L. R. 1056 on that question. In each of the Kansas cases relied on the release taken from one tort-feasor specif-

ically reserved to the injured party his right of action against the other. Many of the cases cited in the annotation referred to are to the same effect. These are not helpful to appellant for the reason that there is no such reservation made in the release here executed to the railway company. In some of the cases the court looked to the intent of the parties as disclosed by the release; that is, even if there was no specific reservation in the release, it was examined to see if anything could be gathered from it indicating that the injured party was not intending to release the other tort-feasor. But there is nothing in the instruments of release executed by the plaintiff in this case to indicate any reservation on his part of a right to sue anyone for the damages he had sustained. The language used is not susceptible of such construction.

Appellant argues that the amount received in the settlement, $750, is so small in proportion to his claim against the railway company of $11,222 that this in itself discloses plaintiff was not settling in full and as against all parties. This argument lacks merit. To give it any force we would have to say, as a matter of law, that the settlement was unfair because inadequate. Plaintiff does not plead that the settlement was unfair, nor that it was induced by fraud or mistake. When the facts are not such as to justify plaintiff in making such a claim on his own behalf he can hardly expect this court to make it for him.

The judgment of the court below is affirmed.

JOCHEMS, J., not participating.