No. 32,350

ULMAN PARIS, *Appellant*, v. A. L. CRITTENDEN, *Appellee*.

(46 P. 2d 633)

Opinion filed July 6, 1935.

C. L. Kagey, Hal M. Black and L. M. Kagey, all of Wichita, for the appellant.

H. W. Hart, Glenn Porter, Enos E. Hook and Getto McDonald, all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the plaintiff, Ulman Paris, against the defendant, A. L. Crittenden, a physician, for malpractice.

Plaintiff alleged in his petition that defendant is a practicing physician and surgeon residing in the city of Wichita; that on the 17th day of January, 1933, the plaintiff was sixty years of age, in good health and sound physical condition, and was employed as a cigar salesman, making from $80 to $100 per month. On said date he slipped upon some ice on the outside stairs of the apartment house where he was living, causing him to fall and fracture the humerus bone of the right arm about five or six inches below the shoulder joint. He was taken to the Wesley Hospital in Wichita, and the defendant was called to treat the fracture. Defendant treated the fracture at the hospital for twenty-one days, when the plaintiff was discharged from the hospital and went to the home where he was then living, in the city of Wichita, and defendant continued to treat the injured arm for a period of four months thereafter.

It is alleged that defendant was guilty of negligence in treating the arm in the following particulars: He directed and permitted this plaintiff to be placed in a bed in the hospital with the casters at the foot of the bed removed so that the plaintiff was in a slanting position, with his head and shoulders much higher than the rest of his body. On account of such position in the bed, he constantly slipped down, and in moving him back up in the bed the fibers at the union of the bones would break so that the pieces of the bones did not knit, and such treatment caused a callus to form at the broken ends of the bone and prevented the proper knitting of the bone.

It is further alleged that defendant negligently failed to place the arm and shoulder and the upper part of the body in a cast after bringing the bones together, in order to keep it in an immovable position, and give the broken pieces of the bone a chance to knit and

join. Defendant also negligently would flex the upper part of the arm and permit it to be flexed when the same should have, by proper treatment, been kept in a rigid position, and by so doing the fibers did not knit and could not knit permanently. On account of such negligence the points of the bones failed to knit, and plaintiff as a result has lost the use of his right arm; that had it not been for the negligence of the defendant in treating the arm, and if the arm had been treated in the proper manner, as alleged, the bones in said arm should and would have united in about five weeks, but no proper splints were placed upon the arm, no cast was placed upon the outside of the arm, shoulder and upper part of the body so that the broken bone could have been kept rigid and permitted to unite. The defendant also negligently did not examine the arm properly and did not use X rays, as he should have done at proper times to ascertain whether the bone was knitting as a result of his treatment.

On account of the negligence of defendant in treating the fracture the plaintiff suffered great pain and anguish, for which he claims damages in the sum of $1,500. Plaintiff has been unable to work for a period of twenty months, and has therefore sustained damages for loss of time of one year and eight months, to his damage in the sum of $1,800. He was compelled to pay or obligate himself to pay the sum of about $200 for hospital fees and expenses. He has also been permanently injured in that he has lost the use of his right arm for almost all purposes, and such injury will be permanent, to his further damage in the sum of $6,000. Plaintiff prays for judgment against defendant for the sum of $9,500 and costs.

The defendant, Crittenden, answered that he was not guilty of any negligence in the treatment of the plaintiff, and especially denied that any injury which the plaintiff received, or any damages arising therefrom, are in any manner the result of any act of omission or commission on the part of defendant. Defendant alleged that on the 3d day of January, 1934, the plaintiff, in consideration of the payment to him of $350, executed a release to Charles and Mollie Kleinheins (owners of the apartment), releasing them from any and all actions, causes of action, damages or demands of whatsoever nature in any manner arising, or to grow out of any and all accidents or matters, and especially the said accident which occurred to the plaintiff on or about the 17th day of January, 1933.

To this the plaintiff replied that on the 17th day of August, 1933, the plaintiff filed an action for damages against Charles and Mollie

Kleinheins, for injuries received when he fell down the steps of an apartment building owned by them; that they denied any liability for said injuries so received, and have ever since denied it; that the $350 paid to plaintiff in that case was done in compromise of the action, not because of any liability on behalf of the Kleinheins. Plaintiff alleged that there was no negligence in behalf of Charles and Mollie Kleinheins, and no legal liability attached to them for the injuries so received and that he dismissed the case with prejudice to any future action. In that case the defendants alleged that the nature of the steps down which plaintiff fell was such that such injuries were the result of his own acts or carelessness and negligence, and the direct cause of the injuries he sustained; that the steps were properly constructed, and were in the same condition as to construction at the time of the accident as they were when the plaintiff rented the property, with full knowledge of the condition of the steps; that plaintiff had exclusive control of the occupancy of the apartment and of the steps in question and that the plaintiff was guilty of contributory negligence.

The court on the motion for judgment held that judgment against the defendant, Crittenden, should not be allowed and dismissed the case with prejudice at the costs of the plaintiff.

On the facts alleged, the court held the negligence of the physician was really the negligence of the Kleinheins, and that they had been released when the consideration of $350 was paid and accepted by Paris. The case of *Keown v. Young,* 129 Kan. 563, 283 Pac. 511, is regarded by the court as presenting substantially the facts and principles involved here. As a general rule the plaintiff might have recovered from the original wrongdoer for the negligence of the physician in the treatment of the injury, providing the physician had been selected with care. The law regards the negligence of the person who causes the original injury as the proximate cause of damages flowing from the negligence of the physician and holds him liable therefor. Being liable for the damage, Charles and Mollie Kleinheins were at liberty to compromise and settle, and plaintiff did settle with them for every demand growing out of the accident of January 17, 1933, and accepted the consideration of $350 agreed upon. If plaintiff had asked for and had obtained a settlement of the damages, the action against the doctor for malpractice would not lie. The damages sought certainly grew out of the accident of January 17, 1933, when plaintiff fell on the back stairway of the

place where he was living. The case of *Keown v. Young* and the authorities so fully examined, and results, reached, settles the questions involved and has determined where the weight of authority is. In that case it was recognized that there was a division of judicial opinion on the question, and this state has lined up on the side making the original wrongdoer liable as being the proximate cause and giving him power to release the physician who may have been negligent in treating the case. The court decided that—

"When one sustains personal injuries because of the negligence of another and uses due care in selecting a physician to treat his injuries and in following the advice and instructions of the physician throughout the treatment, and a poor result is obtained because of the negligence of the physician, the law regards the negligence of the one who caused the original injury as the proximate cause of the damages flowing from the negligence of the physician and holds him liable therefor.

"When one sustains personal injuries by the negligence of another and settles his claim for damages against such party, and executes to him a release and discharge 'of all suits, actions, causes of action and claims for injuries and damages, which I have or might have arising out of the injuries,' such release covers and includes a claim for injuries resulting from the negligence of a physician called by the injured party to treat his injuries when there is no claim of a lack of due care in selecting a physician or in following his advice with respect to the treatment." (Syl. ¶¶ 2, 3.)

Following this authority the trial court ruled that the release was valid and binding, that the physician was acquitted of his negligence and is not liable for such negligence in the treatment of the case.

The judgment is affirmed.

JOHNSTON, C. J. (dissenting): I am not satisfied with the application of the rule of *Keown v. Young,* supra, to the facts of this case. The Kleinheins were not liable for the neglect of the physician in treating plaintiff. They were not joint tort-feasors in the malpractice on the plaintiff. The physician alleges in his answer that he was not guilty of the practices alleged by the plaintiff in the treatment of the plaintiff. The answer of the Kleinheins showed three things which stated a defense: First, an intervening act of God; second, the steps were in the same condition at the time of the accident as they were at the time the plaintiff rented the apartment; third, the steps were under the exclusive care and control of the plaintiff. After setting out these defenses plaintiff filed no reply and dismissed his case with prejudice. The failure to file a reply admitted the truth of the allegations in the answer, and were there-

fore binding on the plaintiff. The case was decided on the pleadings and the money they paid in compromise of the action was $350, when the damage alleged in that action amounted to $6,650. Besides their denials, their defense was that plaintiff was guilty of contributory negligence. No reply to this answer was ever made. A defense was therefore admitted for want of a reply.

Apart from this fact the Kleinheins had no part in the wrongs alleged against the physician. It was a case where the wrongs done were wholly those of the physician, and the Kleinheins had no part in them. The plaintiff denied any liability of the Kleinheins for said injuries and has ever since denied such liability, and in giving a release expressly stated, as shown by the answer, that the $350 was paid to plaintiff in this case in compromise of an action and not because of any liability on behalf of Charles and Mollie Kleinheins. It was alleged that no negligence and no legal liability attached to them for the injuries so received, and that plaintiff dismissed the case with prejudice to any future action. In *Railway Co. v. Mc-Wherter*, 59 Kan. 345, 53 Pac. 135, it was held that—

"The rule that a settlement by and discharge of one of two or more joint wrongdoers operates as a discharge of both has no application unless both are guilty of the wrongful act. A settlement with and discharge of one not in fact guilty will not affect the liability of the wrongdoer." (Syl. ¶ 1.)

In the opinion it was said:

"As a general rule, the nature of the case does not admit of an apportionment of the damages among the wrongdoers, but they are liable jointly and severally for the whole. When the wrongful act is not done jointly by the persons from whom compensation is sought, but is the deed of one or the other and not of both, we are unable to perceive on what principle a settlement with and discharge of one affects the cause of action against the other. Certainly it is not by way of estoppel, for the party not released is no party or privy to the arrangement, and has no joint interest with the one discharged." (p. 352.)

In the case of *Turner v. Hitchcock*, 20 Ia. 310, it was held that:

"A release of a person as a joint trespasser to a person who is not in fact liable to the releasor does not destroy the right of action of such releasor against those who are liable. (Citing many authorities.)"

In *Edens v. Fletcher*, 79 Kan. 139, 98 Pac. 784, the court stated:

"For in the case last cited (*Railway Co. v. McWherter*, 59 Kan. 345) it was held not to apply where the proof did not show that the defendant released was liable for the tort although charged with its commission." (p. 142.)

The court further cited the case of *Abb v. Northern Pacific Ry.*

*Co.,* 28 Wash. 428, annotated in 92 A. S. R. 864, 881, where it was said:

"The question of whether a release to, or a satisfaction from, a person not shown to be liable as a joint wrongdoer, comes within the rule that a discharge of one joint wrongdoer is the discharge of the others, is attended with no little difficulty, on principle, and the authorities are more or less conflicting. Many cases hold that the rule applies only where the money is paid by, or the release executed to, one who is himself actually guilty of the wrong. In other words, a release to, or a settlement with, one not in fact liable to the releasor or not shown to be a joint tort-feasor in, although perhaps connected with the wrong committed, does not destroy the right of action against those who otherwise are liable. To our mind this is not unreasonable, and it seems to be supported by the weight of authority."

Many cases are cited in support of this contention.

In 14 L. R. A., n. s., 322, there is an annotation on the subject in which it is said:

"In some jurisdictions it is held that a release, for a consideration, of one not shown to be a joint wrongdoer, will not operate to discharge others who are responsible (citing cases), the argument being that, where the wrongful act is not done jointly by the persons from whom compensation is sought, but is the deed of one or the other, and not of both, a settlement with and discharge of one cannot affect the cause of action against the other."

The fact that no reply was made to the averments of the defense is deemed to be important. What was Kleinhein's intention in the execution of the release? He had been charged with liability for a defective stairway, and that was far from the things alleged to have been done by the physician. The intention of the party was manifest to some extent by the amount contributed for the release. It has been suggested that $350 was inadequate for the result of the physician's negligence. It is said that he simply bought his peace with the amount paid. The sum was so small and inconsiderable that it is difficult to believe that he was releasing a third party that had done over $9,000 worth of damage.

In *Purchase v. Seelye,* 231 Mass. 434, an employee of a railroad corporation, in the course of his work, suffered a rupture in his right groin and went for treatment to a surgeon who the next day mistook him for another patient and performed an operation on his left side. The employee made a claim on the railroad corporation for alleged negligence. The claim was settled and the employee executed and delivered to the corporation a release of all claims and demands which might arise out of the injury. Later he brought an action of tort against the surgeon for his injuries sustained by

reason of the defendant's negligence in performing the operation. The defendant alleged in defense his discharge from liability by the release of the railroad corporation as one of two alleged tort-feasors. It was held that operating on the wrong side was not a natural and probable result of the first injury and created a new and independent cause of action for which the original wrongdoer was in no way responsible and which consequently was not barred by the release.

In many of the cases cited there are exceptions to the rule that the release of the wrongdoer releases a physician subsequently treating the injuries, and a number where the injury was aggravated or further injury was done in the treatment.

In *Staehlin v. Hochdoerfer*, 235 S. W. 1060 (Mo.), where plaintiff received a broken leg and settled with his employer for all damages for the injury, and at the same time sued the physician who treated him because gangrene had developed in the leg and it was necessary to amputate it, the court held that he could recover against the physician because he had reserved the right to so proceed and that plaintiff had shown no intention in the release of his employer to release the physician.

The intent of the parties to the original release was a question for the jury, and under the issues raised the plaintiff had a right to have the jury find whether or not he had been compensated for his loss, and when considering the issue to consider plaintiff's testimony, even though it might contradict the terms of the release. The court in *Wheat v. Carter*, 79 N. H. 150, held that the question of the intent of the parties to the original release was a question of fact which they had a right to have determined.

As to the liability of the Kleinheins: Under the admission in the pleadings there was no legal liability nor wrongdoing on behalf of the Kleinheins. The $350 was paid, as is apparent, for the purpose of buying peace, and if that is a question of fact, then plaintiff has a right to have the jury pass on it, but the law is so well settled under the admitted facts, that this court can say as a matter of law there was no liability or wrongdoing on behalf of Kleinheins, and the fact that only $350 was paid tends to show that they were without fault and that the release granted them had no effect upon the defendant. I think the negligence charged against the physician was not barred by the release.

SMITH, J., joins in this dissent.

HARVEY, J. (concurring specially): The legal principles announced and followed in *Keown v. Young*, 129 Kan. 563, 283 Pac. 511, were not new when that decision was written, as shown by the authorities cited therein. Since that decision was announced it has been cited, with others to the same effect, and the legal principles stated therein have been followed, by the supreme court of New Jersey (*Adams v. De Yoe*, 11 N. J. Misc. 319, 166 Atl. 485); the supreme court of Iowa (*Phillips v. Werndorff*, 215 Ia. 521, 243 N. W. 525); the supreme court of Minnesota (*Smith v. Mann*, 184 Minn. 485, 239 N. W. 223); the supreme court of Florida (*Feinstone v. Allison Hospital, Inc.*, 106 Fla. 302, 143 So. 251); and by the Texas court of civil appeals (*Phillips v. Wright* [Tex. Civ. App.], 81 S. W. 2d 129). The legal principles, with authorities from many states, also are embodied in the text (53 C. J. 1248) printed since our opinion was announced. Hence, it appears our decision is well grounded in the law. In fact, appellant in this case does not seriously contend otherwise. While complaining somewhat of the legal principles there announced, he makes no contention the decision is not in harmony with the law, nor that it should be reversed. Rather, he seeks to distinguish it from the case at bar by now contending that the Kleinheins, whom he first sued as the original wrongdoers, were never in fact liable. As a basis for this argument it is pointed out that they answered in that case denying liability, and that they confessed no liability at the time they made the payment of $350. An examination of the opinion in *Keown v. Young*, supra, discloses that the same question was presented by the record in that case. It was then thought to be not worthy of special consideration, and it should receive no special consideration here. Aside from other points which might be suggested, plaintiff should not be heard to say that he sued a party, charging him with negligence, and accepted money from him in settlement of such charge, but as a matter of fact there never was any liability. Such a contention would require the defendant in this action to assume the burden of proving the negligence of the defendant in the original case, while plaintiff would take the position that the defendant in the original action was not negligent, which is directly opposed to the position he took in the first action and upon which he recovered by way of settlement.

I agree that the judgment of the court below should be affirmed.