Mabel K. HARRIS, Appellant,

v.

Dr. R. M. BRIAN, Appellee.

No. 5779.

United States Court of Appeals
Tenth Circuit.

May 6, 1958.

Pat Warnick, Wichita, Kan. (David L. Ford, Ft. Smith, Ark., was with him on the brief), for appellant.

William Tinker, Wichita, Kan. (R. C. Woodward, El Dorado, Kan., and Getto McDonald, Arthur W. Skaer, Jr., Hugh P. Quinn, William Porter, John E. Lancelot, Alvin D. Herrington, Wichita, Kan., were with him on the brief), for appellee.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff, Mabel K. Harris, who was injured as a result of a collision between her automobile and one driven by a third party, brought this action against the defendant, Dr. R. M. Brian, for damages arising out of alleged negligent treatment of her injuries. Plaintiff settled with the driver of the other vehicle and executed a general release from all claims for damages arising out of the accident. This is an appeal from a summary judgment for the defendant. The sole question presented is whether the facts of the case bring it within the Kansas rule that a release of a tort-feasor from all claims for damages arising out of an accident, operate to release a claim for a physician's negligence in treating the injuries.

On April 24, 1955 the plaintiff was involved in an automobile accident in which she sustained, among other injuries, a broken bone in her right leg. She was taken to the hospital in El Dorado, Kansas, where the defendant, a licensed practicing physician, was employed to treat her injuries. Incident to this treatment the defendant placed a cast on plaintiff's broken leg. She remained under defendant's care in the El Dorado hospital until about May 1, 1955, when she was transferred to a hospital in Wichita, Kansas, and placed under the care of different doctors. It was alleged that the defendant carelessly and negligently fitted a cast on plaintiff's broken

leg and that he negligently failed to place in the cast a sufficient amount of padding to protect the flesh of the leg; that by reason of the careless and negligent manner in which the cast was fitted and adjusted to plaintiff's leg, together with the lack of sufficient padding, there resulted extensive blistering and extreme infection along the entire leg; that this infection necessitated blood transfusions, surgery, skin grafting and prolonged hospitalization; and that defendant's negligence retarded plaintiff's recovery and caused additional pain and suffering, together with permanent injuries and disfigurement.[1]

On July 13, 1955, through an attorney, plaintiff settled any claims which she had against Ronald E. Ball, the driver of the vehicle which had struck her, in consideration of $4,250. She executed a release which provided in part:

> "That I, Mabel K. Harris, * * * have remised, released, and forever discharged * * * Mr. and Mrs. O. L. Ball and Ronald E. Ball and his, her, their, or its successors and assigns, heirs, executors, administrators, and all other persons, firms, and corporations, of and from any and all claims, demands, rights, or causes of action of whatsoever kind or nature, arising from or by reason of any and all known and unknown, foreseen and unforeseen bodily or personal injuries, damage to property, and the consequences thereof, resulting, or to result, from a certain accident which happened on or about the 24th day of April, 1955, and for which I have claimed the said Mr. and Mrs. O. L. Ball and Ronald E. Ball to be legally liable,

which liability is hereby expressly denied."

The law of Kansas, which of course controls here, seems to be well established,

> "* * * that, when one sustains personal injuries because of the negligence of another, and uses due care in selecting a physician to treat his injuries and in following the advice and instructions of the physician throughout the treatment, and his injuries are aggravated, or a poor result obtained by the negligence of the physician, the law regards the negligence of the one who caused the original injury as the proximate cause of the damages flowing from the negligence of the physician, and holds him liable therefor. * * *" Keown v. Young, 129 Kan. 563, 283 P. 511, 514.

See also Paris v. Crittenden, 142 Kan. 296, 46 P.2d 633; McIntosh v. Atchinson, T. & S. F. Ry. Co., 109 Kan. 246, 198 P. 1084. The Keown case concludes that:

> "* * * It is fundamental that one who has been paid, or has settled, for all injuries sustained, cannot maintain a second action for such injuries." 283 P. 514.

This rule was also followed in Paris v. Crittenden, supra. The Keown and Paris cases were both malpractice actions against physicians who had treated plaintiffs with broken bones caused by the alleged negligence of others, where the original tort-feasors had been released from liability by the plaintiffs through settlement. In both cases the court adopted what appears to be the majority rule, that an injured party can recover

---

1. The acts of negligence were particularly pleaded as follows:

"a. By failing to use due care and diligence in the treatment of this plaintiff.

"b. By failing to exercise ordinary care in the treatment of the said plaintiff when by the exercising of ordinary care the defendant could and should have avoided injuring this plaintiff.

"c. In the failure to use proper skill and knowledge in the treatment and care of this plaintiff.

"d. In allowing plaintiff to remain in her condition for a period of many days without proper treatment and care.

"e. By failing to properly apply and set the cast to plaintiff's right leg.

"f. By failing to insert sufficient padding to protect plaintiff's leg while in said cast."

from the original tort-feasor for the damages caused by the negligence of a physician in treating the injury the tort-feasor caused, provided the injured party used care in selecting a doctor. Therefore, a release of the original wrongdoer would release the doctor from liability for his negligence. See Annotation, 40 A.L.R.2d 1075. See also Annotation, 126 A.L.R. 912; 39 A.L.R. 1268; 8 A.L.R. 506. The two Kansas cases mentioned above, particularly the Keown case, are strikingly similar to this case and fully sustain the summary judgment.

The plaintiff contends that the facts in this case bring it within an exception referred to in the Keown case that the original tort-feasor is not liable for negligence of an attending physician if the negligence caused "a distinctly new injury". In recognizing this type of an exception, the Kansas court cited Purchase v. Seelye, 231 Mass. 434, 121 N.E. 413, 8 A.L.R. 503, a case in which the doctor mistook the injured person for another of his patients, performed an operation which had nothing to do with the injury, and was held liable for the unauthorized operation.[2] The allegations of the complaint in this case show that the defendant negligently treated only the injuries to the plaintiff which were caused by the third party. If additional damages were caused by defendant's negligence, they were clearly due to mistakes and lack of skill in the treatment and means employed to effect a cure of the original injuries. The damages sued for were incident to and had a direct causal relationship to the original injuries and were not distinctly new.

The determinative question is whether damages for the injuries sustained as a result of the treatment at the hands of the defendant could have been recovered from the original wrong-doer. Under the Kansas decisions, there being no claim that plaintiff did not exercise care in selecting a physician, the original tort-feasor was liable for damages caused by the negligence of defendant, and the all-inclusive release of the original tort-feasor released the defendant.[3] The effect of plaintiff's argument is that we should apply the reasoning of the dissenters, not the majority, in the Paris case.

Affirmed.

2. In Purchase v. Seelye, 231 Mass. 434, 121 N.E. 413, 8 A.L.R. 503, the plaintiff sustained a hernia in his right groin through the negligence of his employer. He consulted the defendant, a doctor, the same day. The next day the defendant operated on the plaintiff and the following day plaintiff discovered the operation had been performed on his left side. He inquired about this and the doctor admitted he thought the plaintiff was another patient who had a hernia on the left side. Later the defendant did operate on the plaintiff's right side to correct the injury.

3. In Keown v. Young, 129 Kan. 563, 283 P. 511, 513, the court said:
"In support of the judgment of the court below, the appellee contends that in his action against the railway company plaintiff sought to recover, and could have recovered (had he established the negligence of the railway company which caused his injury), all the damages he now seeks to recover in this action. This contention must be sustained.
"The general rule is stated in 8 R.C.L. 449, as follows: 'It is the general rule that if an injured person uses ordinary care in selecting a physician and in the employment of other means to effect a cure, the law regards an injury resulting from mistakes of the physician or his want of skill, or a failure of the means employed to effect a cure, as a part of the immediate or direct damages which naturally flow from the original injury. There is a very limited number of cases, however, to the effect that the defendant is not liable for the increased damages caused by the unskillfulness of the physician, even though reasonable care was used in selecting him; but these are apparently not supported by reason, and are clearly against the weight of authority. It follows that one injured is not bound to employ the highest medical skill which may be found, nor does the law make him an insurer that the physician he employs will be guilty of no negligence, error of judgment, or want of care. Where, therefore, ordinary care and prudence are exercised by one injured, whatever the outcome, he may recover for the entire injury sustained, for in the law the liability to mistakes in curing is then incident to the injury.' * * *".