**Aubrey Tinsley SADE, Appellant,**

v.

**NORTHERN NATURAL GAS COM-
PANY, Appellee.**

**No. 71–1103.**

United States Court of Appeals,
Tenth Circuit.

March 30, 1972.

Gene H. Sharp, Liberal, Kan. (Lampkin, Wolfe, Sokolosky, Burger, Abel, McCaffrey & Norman, Oklahoma City, Okl., on the brief), for appellant.

Richard W. Fowler, Oklahoma City, Okl. (Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, Okl., on the brief), for appellee.

Before BREITENSTEIN, McWILLIAMS, and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

The real issue to be resolved here is the effect, if any, of the Oklahoma Workmen's Compensation Law on an action sounding in fraud brought by one Aubrey Tinsley Sade against Northern Natural Gas Company in the United States District Court for the Western District of Oklahoma. The trial court concluded that the Oklahoma Workmen's Compensation Law precluded the maintenance of such action and granted Northern's motion for summary judgment. Sade appeals. We reverse.

The present controversy arises out of the following chronology: (1) The Dresser Engineering Company, an Oklahoma corporation, as an independent contractor, entered into a contract with Northern, a Delaware corporation with its main offices in Omaha, Nebraska, to perform certain work at Northern's pumping station near Tescott, Kansas; (2) Sade, an employee of Dresser, was on the job site near Tescott, Kansas, and was severely injured in an explosion which occurred as he was assisting in the installation of a T-connection connecting two existing pipelines; (3) the explosion was caused by the negligent act of one of Northern's employees who mistakenly pressed a switch which permitted gas to be transmitted to the area where Sade was working; (4) on December 8, 1965, Sade executed in Oklahoma City, Oklahoma, a "Compromise and Settlement Agreement" wherein he acknowledged the receipt of $17,500 and declared that the receipt of such sum was "in full settlement and satisfaction and for full release and discharge * * * of all actions, claims and demands whatsoever that may now or hereafter exist against Northern on account of all injuries * * * as a result of the accident * * * which occurred on or about the 24th day of July at or near Northern's Tescott, Kansas, compressor station"; (5) in 1966 Sade filed a claim with the Oklahoma Industrial Court against his employer, Dresser, the claim later being the subject of a settlement on a joint petition order whereby Sade received the sum of about $20,000; (6) on June 22, 1967, Sade brought an action in the state court of Kansas against certain employees of Northern, alleging negligence and seeking damages for the injuries sustained by him in the explosion; and, (7) the Kansas state court on January 13, 1969, granted summary judgment in favor of Northern's employees on the ground that the aforesaid release obtained by Northern shielded its employees too, which ruling was affirmed on appeal by the Kansas Supreme Court, Sade v. Hemstrom, 205 Kan. 514, 471 P.2d 340 (1970).

Shortly after Sade suffered the adverse judgment in the Kansas trial court, he brought the present action against Northern in the United States District Court for the Western District of Oklahoma. The action is one based on fraud, and the gist of the complaint is that in executing the release Sade was assured by Northern that he was only releasing Northern and that the release would in nowise affect any claim he had against any other company, corporation or person, including employees of Northern. Sade went on to allege that when he sought "to pursue further recourse

against additional parties liable for * * * [his] injuries" in a district court of Kansas, the Kansas court held that the release barred him from further recovery. Accordingly, Sade prayed for damages in the sum of $80,000.

By answer, Northern denied any fraud and, among other things, affirmatively alleged that Sade had received an award from the Oklahoma Industrial Court and that "by reason thereof this defendant was wholly released and exonerated from any other or further liability * * *." Northern filed a motion for summary judgment and in support thereof filed several affidavits relating to the nature of the work being done by Dresser for Northern.

It was on this state of the record that the trial court granted summary judgment in favor of Northern. The trial court, as well as counsel, proceeded on the premise that, if otherwise applicable, the Oklahoma Workmen's Compensation Law precluded the maintenance of the present proceeding. In the trial court, the main argument concerned the applicability of the Oklahoma Workmen's Compensation Law to the present controversy, with the applicability issue in turn depending on whether Dresser at the time of the explosion was performing an integral part of the business of Northern. Based on the aforesaid affidavits, the trial court concluded that Dresser was performing work customarily performed by Northern and that the Oklahoma Workmen's Compensation Law was therefore applicable and precluded the maintenance of the present action. We take a different approach to the matter.

At the outset, it should be emphasized that this is not a workmen's compensation case, as such, but an action in fraud. Admittedly, reference must be made to the workmen's compensation laws of both Kansas and Oklahoma in resolving the controversy, but the action is nevertheless still one for damages resulting from alleged fraud and deceit on the part of Northern.

Northern's basic position in this court, if we correctly understand it, is that the Oklahoma Workmen's Compensation Law controls and that under the Oklahoma law Sade's exclusive remedy was to file a claim for compensation benefits in Oklahoma's Industrial Court. The corollary of this proposition is that under Oklahoma law Sade has no right to maintain a common law action in negligence against either Dresser or Northern, or any of their employees. Such being the situation, i. e., Sade having no cause of action against Northern's employees, Sade lost nothing in executing the release and therefore sustained no damage even assuming fraud on the part of Northern in procuring it. As concerns the $17,500 given Sade in return for the release, Northern describes this payment as a "windfall" resulting from a "moral commitment" made by Northern to Sade before it discovered its immunity. The foregoing syllogism might well be sound *if* the industrial accident had occurred in Oklahoma, but it did not. Accordingly, the Workmen's Compensation Law of Kansas must also play a role in this controversy and we shall first refer to its law on the subject.

■ Under Kansas law, it would appear that immediately after the accident Sade's exclusive remedy against both Dresser and Northern was under the state's workmen's compensation law, and that Sade had no common law remedy in negligence against either Dresser or Northern. K.S.A. 44–501 and 44–503; Kelley v. Summers, 210 F.2d 665 (10th Cir. 1954); and Lessley v. Kansas Power & Light Co., 171 Kan. 197, 231 P.2d 239 (Kan.1951).

■ However, under the Kansas law in effect at the time of the accident in question (it has since been changed), in addition to his remedy under the state's workmen's compensation law, Sade retained a common law remedy against a negligent third party. K.S.A. 44–504. The precise language of the foregoing statute is that when the injury or death for which compensation is

payable was caused under circumstances creating a legal liability against "some person other than the employer," then the injured workman has the right to receive compensation under the act and also to pursue his remedy by proper action in a court of competent jurisdiction against such other person, with appropriate subrogation rights. And the phrase "some person other than the employer" has been construed to permit a suit against employees of the employer. Roda v. Williams, 195 Kan. 507, 407 P. 2d 471 (1965). So, immediately after the accident it would seem that although under Kansas law Sade could only proceed against Dresser and Northern by filing a claim for workmen's compensation benefits, he retained a common law remedy against the employees of Northern who caused the explosion.

It was in this setting that Sade and Northern executed the release in Oklahoma on December 8, 1965, which Sade claims was intended by the parties to only release Northern, and not its employees. With the case in its present posture, we assume that the release was the result of Northern's fraud, though we fully realize that Northern denies any fraud in the execution of the release. On such hypothesis, i. e., that the release was the result of fraud, it would appear that Sade did sustain damage as the result of Northern's fraud for the reason that by signing the release he lost his common law remedy against Northern's employees. The truth of this particular proposition is said to be demonstrated by the fact that Sade's common law action against Northern's employees was subsequently dismissed by the Kansas courts on the ground that the release as written precluded Sade from maintaining a common law action in negligence against Northern's employees, an action which under Kansas law he otherwise could have maintained against Northern's employees. In our view of the matter, then, as of the date when the release was executed Sade did have a common law action in negligence against Northern's employees under Kansas law, and according to the complaint in the instant proceeding Sade lost that right because of Northern's fraud.

There remains for consideration the applicability of the Oklahoma Workmen's Compensation Law to the facts of the instant case. As indicated, in 1966 Sade filed claim against his employer, Dresser, with the Oklahoma Industrial Court and the claim was ultimately settled under a joint petition order for $20,000. However, it is Northern's position that the Oklahoma Workmen's Compensation Law controlled to the total exclusion of any Kansas law on the subject, even before there was any award in the Oklahoma Industrial Court. Additionally, it is suggested that even if it be determined that Sade had under Kansas law a common law cause of action against Northern's employees, by his subsequent acceptance of Oklahoma's compensation benefits Sade extinguished whatever rights he may theretofore have had against such employees. Therefore, according to Northern, he cannot now claim damage because of alleged fraud on the part of Northern.

■■ Under Oklahoma law, certainly as relates to industrial accidents occurring within the state, an injured employee's exclusive remedy is the filing of a claim for compensation benefits against his employer in the Oklahoma Industrial Court, and the injured employee has no right to proceed in negligence against either his employer or the latter's employees. 85 Okla.Stat.Ann. § 12. In like vein, it has been held that the exclusive remedy of an injured employee of an independent contractor against the principal employer who is secondarily liable under Oklahoma's Workmen's Compensation Law is also under the state's compensation law and that the injured employee may not maintain an action in negligence against the principal employer. And this immunity would also apply to the principal employer's employees. Lunow v. Fairchance Lumber Company, 389 F.2d 212 (10th Cir. 1968); Skelly Oil Company v. Dis-

trict Court, 401 P.2d 526 (Okl.1964); and *Sumpter v. Lawton Cooperative Association,* 384 P.2d 908 (Okl.1963).

■ As concerns an industrial accident occurring outside Oklahoma where the contract of employment was entered into within Oklahoma, the statutes provide that the injured employee has the right to an election, i. e., he may proceed to make claim for compensation benefits in Oklahoma, "as fully as if such injury or accident had occurred within this State," or he may recover "any benefits or compensation provided under any law of the State where injury occurred * * *." 85 Okla.Stat.Ann. § 4. That same section of the statute further provides that if the injured employee does prosecute "to final determination" such action under the law of the state where the injury occurred, such shall then preclude any recovery under the Oklahoma Workmen's Compensation Law. There is no provision in the Oklahoma law, however, which specifically purports to preclude one who has recovered under Oklahoma law from thereafter pursuing any additional remedies he may have under the laws of the state where the injury occurred. Moreover, under Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), such could be accomplished only by "unmistakable language," which language is not to be found in Oklahoma law. *McCartin* merits some comment.

In *McCartin,* a contract of employment was entered into in Illinois and the employee was subsequently injured in an industrial accident while working in Wisconsin. The injured employee first filed a claim for compensation benefits in Wisconsin and while that claim was pending he made claim also in Illinois *for compensation benefits under Illinois law.* A formal order awarding a lump sum settlement was later entered by the Illinois Commission. The injured employee then was awarded certain additional benefits by the Wisconsin Commission, giving credit to the sums paid under the Illinois Act. On judicial review, the Wisconsin Supreme Court on the strength of Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), affirmed a lower court's order vacating the Wisconsin award on the ground that under the Full Faith and Credit Clause of the United States Constitution the subsequent Wisconsin award was barred by the prior Illinois award. On review, the United States Supreme Court reversed and held that the Illinois award was final and conclusive only as to rights arising in Illinois and that Wisconsin was free under the Full Faith and Credit Clause to grant an award of compensation in accord with its own laws. In so holding, the Supreme Court declared that there was nothing in the Illinois compensation statute, or decisions interpreting it, that would indicate that it was designed to preclude recovery in another state for injuries received there in the course of an Illinois employment. The court went on to state that "only some unmistakable language by a state legislature or judiciary would warrant our accepting such a construction."

We recognize that in *McCartin* the Illinois award "reserved" the injured employee rights under Wisconsin law. However, the case did not turn on that fact. *See,* for example, Larson's Workmen's Compensation Law, Vol. 3, page 371, where the following comment is made concerning *McCartin:*

> " * * * The primary ground of distinction was not, however, the express reservation of Wisconsin rights, but the absence in the Illinois statute or case law of an explicit prohibition against seeking additional or alternative relief under the laws of another state. Since the vast majority of compensation laws resemble the Illinois law in this respect, the decision has been taken to mean that for all practical purposes successive awards are now sanctioned. * * * "

And under the more recent case of Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), it is doubtful that such could be accomplished even by the use of "unmistakable language."

In *Carroll,* the contract of employment between the employee and his immediate employer was entered into in Missouri. Thereafter, the employer entered into a contract to do work for a general contractor in Arkansas. The employee was later injured in Arkansas as a result of the general contractor's negligence. The injured workman first made claim for compensation benefits under Missouri law, which law provides the exclusive remedy for injuries received inside or outside the state under contracts entered into in Missouri as to both the immediate employer and a general contractor. Arkansas law, however, provided that a proceeding under its compensation act was the exclusive remedy against the immediate employer, but not as against a general contractor. Accordingly, the injured employee brought an action against the general contractor in Arkansas and obtained a judgment in common law damages in the federal district court in Arkansas. The Circuit Court reversed on the ground that the Full Faith and Credit Clause of the United States Constitution barred recovery. The United States Supreme Court reversed, and in so doing held that the State where the industrial accident occurs is not required by the Full Faith and Credit Clause to allow only that remedy which is marked as the exclusive one by the State where the contract of employment was entered into. In so holding, the Supreme Court declared that "were it otherwise, the State where the injury occurred would be powerless to provide any remedies or safeguards to nonresident employees working within its borders."

■ Applying the rule of *Carroll* to the instant case, Kansas is not required by the Full Faith and Credit Clause to allow only that remedy which is marked as the exclusive remedy by Oklahoma. As previously indicated, as of the date of Sade's injuries the public policy of Kansas, unlike the public policy of Oklahoma, permitted an injured employee to recover compensation benefits from his employer and to later maintain a common law action against negligent third parties, including an employee of the employer. In addition to Roda v. Williams, *supra, see* Houk v. Arrow Drilling Company, 201 Kan. 81, 439 P.2d 146 (1968), and Clifford v. Eacrett, 163 Kan. 471, 183 P.2d 861 (1947). And there is nothing to indicate that a contrary result would be reached simply because the prior award of compensation benefits had been made under the compensation laws of another state, rather than those of Kansas. In this regard reference is again made to the fact that even after Sade's recovery of Oklahoma workmen's compensation benefits, Sade did bring a common law action in Kansas against Northern's employees, and the action was summarily dismissed because of the release, *not* because Sade's cause of action under Kansas law was somehow precluded by the Oklahoma Workmen's Compensation Law or by the fact that he had received an award under Oklahoma law. For all these reasons, then, we are of the view that Sade did have the right to maintain a common law action against Northern's employees, and that he lost this right solely because of a release which Sade claims was obtained as a result of fraud and deceit on the part of Northern.

There is some suggestion that even assuming Sade could maintain in Kansas a common law cause of action against Northern's employees even after his recovery of Oklahoma compensation benefits, it would not necessarily follow that he could do so in Oklahoma courts, inasmuch as such would be in violation of the public policy of the law of the forum. That such result would obtain is perhaps doubtful in the light of Tidewater Oil Co. v. Waller, 302 F.2d 638 (10th Cir. 1962). But as above indicated, we are not here concerned with an effort by Sade to maintain in Oklahoma a negligence action against Northern's employees, or against Northern for that matter. Rather, Sade is suing Northern for its subsequent fraud which foreclosed him from his right to maintain a common law negligence action in Kansas

against Northern's employees. There is no suggestion that an action in fraud is contrary to the law of the forum and the present proceeding, being one in fraud and not common law negligence, is certainly not foreclosed by the Oklahoma Workmen's Compensation Law.

In view of our disposition of the matter, we need not concern ourselves with the issue which, as indicated, was the prime issue before the trial court, namely, was the work being performed by Dresser for Northern an "integral part" of the business of Northern.

Northern also claims that Sade's present action in fraud is barred under the election of remedies doctrine. This matter was not raised by Northern in its answer and it was not the basis for the trial court's dismissal of the action. Under the circumstances, the matter cannot be reached by us on the present record.

Judgment reversed and cause remanded with directions that the trial court vacate its order granting summary judgment for Northern and that further proceedings be consonant with the views herein expressed.