**Aubrey Tinsley SADE, Plaintiff-Appellee,**

v.

**NORTHERN NATURAL GAS COMPANY, Defendant-Appellant.**

No. 72–1833.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 25, 1973.

Decided Aug. 14, 1973.

John W. Norman, Oklahoma City, Okl. (H. Lee Turner, Great Bend, Kan., Gene H. Sharp, Liberal, Kan., and Lampkin, Wolfe, Abel, McCaffrey & Norman, Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Robert P. Hall, Oklahoma City, Okl. (Richard W. Fowler, McAfee, Taft, Cates, Mark, Bond & Rucks, Oklahoma City, Okl., and Floyd E. Jensen, Adams, Jones, Robinson & Malone, Wichita, Kan., on the brief), for defendant-appellant.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

Aubrey Tinsley Sade brought an action sounding in fraud against Northern Natural Gas Company. Upon trial of the matter, a jury returned a verdict in Sade's favor in the sum of $200,000 and Northern now appeals the judgment entered thereon.

This is the second time this case has been before us. For a detailed recitation of the factual background out of which the present controversy arises, see Sade v. Northern Natural Gas Company, 458 F.2d 210 (10th Cir. 1972). The facts will be set forth here only to the extent necessary to an understanding of the issues raised in the present appeal. In this regard we would note that the issues raised in the present appeal are not related to the issues raised in the first appeal and our prior opinion in nowise disposes of the questions now posed.

Sade was a heavy equipment operator employed by the Dresser Engineering Company, an Oklahoma corporation. Dresser entered into a contract with Northern to perform some construction work on Northern's pumping station near Tescott, Kansas. On July 24, 1965, while working for Dresser on the job site near Tescott, Kansas, Sade was very seriously injured in an explosion which occurred as he was assisting in the installation of a T-connection between two existing pipelines. The explosion was catastrophic in proportions, with three persons being killed and nearly a score of workmen being injured, some, such as Sade, suffering severe injuries. This unfortunate event was admittedly caused by one of Northern's employees, who mistakenly and negligently pressed a switch which permitted gas to be transmitted to the area where Sade and the others were working.

On December 8, 1965, in Oklahoma City, Oklahoma, Sade signed a "Compromise and Settlement Agreement" with Northern, whereby, in return for the sum of $17,500, he released Northern from any liability for his injuries. In this regard, it was Sade's testimony upon trial that in signing the release it was his intent to release only Northern, and that he did not intend to release Northern's employees from possible liability for his injuries. Sade further testified that Northern's attorneys had repeatedly assured him that the agreement had been specially drawn so that it would release only Northern, and not its employees, and that he would be free to thereafter bring suit against Northern's employees. The release mentioned only Northern and did not mention its employees.

Based on his understanding of the scope of the settlement agreement, Sade

next brought a personal injury action in Kansas against certain of Northern's employees. The answer set up the release theretofore given Northern, and the Kansas trial court granted summary judgment in favor of Northern's employees on the grounds that the aforesaid release operated as a release of Northern's employees, as well as Northern. On appeal, this ruling was upheld. Sade v. Hemstrom, 205 Kan. 514, 471 P. 2d 340 (1970).

It was in this setting that Sade instituted the present proceeding against Northern in the United States District Court for the Western District of Oklahoma. The gravamen of the complaint was that Northern had fraudulently procured the release in question by assuring him that he was not releasing Northern's employees from possible liability for his injuries, when in fact he was releasing any claim he had against Northern's employees, and that as the result of such fraud he was deprived of his claim against Northern's employees.

The trial court initially granted Northern's motion for summary judgment on the ground that the fact that Sade had received workmen's compensation benefits under Oklahoma law precluded him from maintaining the present fraud action against Northern. On appeal, we reversed. *See* Sade v. Northern, *supra*.

As indicated, trial of this case culminated in a judgment in favor of Sade, and against Northern, in the sum of $200,000. Northern's various contentions as to why the judgment should be reversed are grouped as follows: (1) A claim sounding in fraud cannot be maintained, since the settlement agreement and release were never set aside; (2) the claim is barred under the election of remedies doctrine; (3) the claim is barred as a matter of law under the two-year Oklahoma statute of limitations, 12 O.S. § 95, as amended; (4) improper instruction as to the measure of damages; and (5) certain procedural irregularities occurring during the course of the trial proper. We shall examine these matters, seriatim.

I. No claim in fraud since settlement agreement has never been set aside.

Northern initially argues that though there be a split of authority on the matter, and though the Oklahoma courts have not spoken on the subject, the better rule is that one who releases a personal injury claim by executing a release which is fraudulently procured may not maintain an action in fraud against the one who obtained the release, and that his remedy is to have the release set aside, and then assert his original cause of action against the person or persons purportedly covered by the fraudulently procured release. In support of this proposition, *see* such cases as Shallenberger v. Motorists Mutual Ins. Co., 167 Ohio St. 494, 150 N.E.2d 295 (1958); Davis v. Hargett, 244 N.C. 157, 92 S.E.2d 782 (1956), and Taylor v. Hopper, 207 Cal. 102, 276 P. 990 (1929).

As indicated, other courts have reached a contrary result. *See*, for example, Ware v. State Farm Mutual Automobile Ins. Co., 181 Kan. 291, 311 P.2d 316 (1957); Rochester Bridge Co. v. McNeill, 188 Ind. 432, 122 N.E. 662 (1919), and Urtz v. New York Central & H. R. R. Co., 202 N.Y. 170, 95 N.E. 711 (1911). In *Ware* appears the following pertinent comment, 311 P.2d at 320:

"* * * It is a well-established rule that where a release of a cause of action is procured by fraud the defrauded party may choose any one of three remedies: (1) he may return the consideration paid for the release, thereby rescinding the transaction; (2) he may sue for a rescission and offer to return the consideration; or (3) he may waive his right to rescind and sue to recover any damages suffered by reason of the fraud perpetrated upon him * * *."

Counsel agree that the Oklahoma courts have never considered this particular point. We deem Evans v. Burson, 65 Okl. 114, 164 P. 471 (1917), cited by

Northern as indicating Oklahoma would follow the rule set forth in *Davis, Shallenberger* and *Taylor, supra,* to be inapposite. That case did not involve a fraudulently procured release of a personal injury claim, which is at the heart of the present controversy. Of more help, although still not precisely on target, are such cases as Kennedy v. Raby, 174 Okl. 332, 50 P.2d 716 (1935), and Great American Life Ins. Co. of Hutchinson, Kan. v. Love, 169 Okl. 35, 35 P.2d 948 (1934). In those cases it was held that where a release of rights has been fraudulently procured, an action for damages may be maintained without first obtaining a decree cancelling the release.

 In any event, in such circumstance we elect to defer to the judgment of the trial court as to what the Oklahoma law on this subject will be when the Oklahoma courts are confronted with the problem. The views of a resident district judge on the unsettled law of his state are persuasive and ordinarily accepted. Binkley v. Manufacturers Life Ins. Co., 471 F.2d 889 (10th Cir. 1973), petition for cert. filed, 41 U. S.L.W. 3637 (U.S., May 23, 1973) (No. 72–1572); Jorgensen v. Meade Johnson Laboratories, Inc., 483 F.2d 237 (10th Cir., filed July 25, 1973), and Vaughn v. Chrysler Corp., 442 F.2d 619 (10th Cir. 1971), cert denied, 404 U.S. 857, 92 S.Ct. 106, 30 L.Ed.2d 98 (1971). We accede to the trial court's determination that Sade has a claim upon which relief may be granted.

Before leaving this subject, we would note that the factual sequence in the instant case is somewhat different from those in the cases above cited. Here, Sade brought suit against Northern's employees, and only then found out that such was barred by the release he had given Northern. To thereafter set aside the release would not necessarily enable him to maintain a second action against Northern's employees. Such an action might well be faced with a plea of *res judicata.* In any event, when Sade discovered that the release covered Northern's employees, even though Northern had assured him it did not, his only remedy at that point would appear to be to proceed against Northern on its fraud. More will be said about this particular matter in the next section.

II. The fraud claim is barred by the election of remedies doctrine.

Northern next asserts that under the election of remedies doctrine any claim by Sade against Northern based on fraud is barred by the fact that he had previously instituted, and pursued on through to conclusion, an action in negligence against Northern's employees in the Kansas courts. In this regard, it is Northern's contention that in the Kansas proceeding Sade *disaffirmed* the settlement agreement, and in the present action he *affirms* the settlement agreement and seeks damages resulting from Northern's alleged fraud. This, Sade cannot do, avers Northern, under the election of remedies doctrine.

██ In thus arguing, counsel relies on such cases as Oklahoma Co. v. O'Neil, 440 P.2d 978 (Okl.1968); Dudley v. King, 285 P.2d 425 (Okl.1955), and Freeland v. Dolen, 84 Okl. 286, 203 P. 182 (1922). Those cases stand for the proposition that three requirements must be met before the doctrine of election of remedies can be invoked: (1) The existence of two or more remedies; (2) an inconsistency between the remedies; (3) the choice, with knowledge of the facts, of one of the several available remedies; and that if any one of these elements be missing, "then the result of preclusion does not follow." We have no quarrel with this general statement of the law, but we deem it inapplicable to the present factual situation.

██ In the first place, we disagree with Northern's initial premise that in instituting the Kansas action, Sade disaffirmed the compromise settlement. Rather, as we see it, in instituting the Kansas proceeding it was Sade's position that the compromise agreement was valid and binding, but that it did not cover Northern's employees, but only Northern

itself. In this regard, as earlier noted, the release made no mention of Northern's employees, and, according to Sade, Northern's attorneys repeatedly assured him that the release did not preclude him from suing Northern's employees. Hence, we fail to see just how Sade was disaffirming the release when he sued Northern's employees.

Additionally, one of the essential elements under the authorities above cited is that there be a knowledgeable choice of one remedy to the exclusion of other available and inconsistent remedies. In our view, there was no such knowledgeable choice by Sade in the instant case. On the contrary, the knowledge of a remedy by means of an action in fraud against Northern didn't become known to Sade, with any certainty, till the Kansas courts held that the release covered Northern's employees, as well as Northern. Prior thereto, Sade was at all times of the view that the release preserved his right to sue Northern's employees. Under such circumstances, there surely could not be a knowledgeable choice by Sade of one of several inconsistent remedies. Without further belaboring the point, the present action is not barred by the election of remedies doctrine.

III. The claim is barred as a matter of law under the Oklahoma two-year statute of limitations.

It is agreed that the instant case is governed by 12 O.S. § 95, as amended, which provides that an action for relief on the ground of fraud must be brought within two years after the cause of action has accrued, and that the cause of action shall not be deemed to have accrued until discovery of the fraud. The phrase "until the discovery of the fraud" does not necessarily mean until the party has actual notice of the fraud, and fraud is deemed to have been discovered when, on the exercise of reasonable diligence, it could, and should have been, discovered. Walker v. Walker, 310 P.2d 760 (Okl.1957).

The fraud found by the jury in the instant case necessarily occurred on or about December 8, 1965, the date when the release was signed. The present action was not instituted till March 5, 1969. Accordingly, a pivotal question was when Sade could have known, and should have known, that he was the victim of Northern's fraud in securing the release. If he knew, or should have known, prior to March 5, 1967, then his action is barred by the two-year statute of limitations. If, on the contrary, he only learned of the fraud, and could only have been reasonably expected to thus learn, after March 5, 1967, then his action is not barred by the two-year statute.

Sade instituted his negligence action in the Kansas courts on June 22, 1967, and the Kansas trial court granted summary judgment against him on January 13, 1969. As indicated, Sade instituted the present action on March 5, 1969. It is Sade's position that he did not learn, nor could he reasonably have been expected to learn, of Northern's fraud till sometime after he instituted the Kansas proceeding, when Northern's employees in their answer set up the release supplied them by Northern. It is Northern's position, on the other hand, that Sade should have learned of Northern's alleged fraud long before March 5, 1967.

The trial court submitted to the jury the issue as to when Sade knew, or should have known, of Northern's alleged fraud under instructions which in our view adequately advised the jury of the consequences which would flow from its decision on the matter. We find no error in submitting this matter to the jury. The testimony and inferences to be drawn therefrom bearing on this particular issue were conflicting and posed an issue of fact, not one of law. The jury by its verdict has determined that the action is not barred by the two-year

statute of limitations, and we are not inclined to disturb its finding.

IV. Improper instructions on the measure of damages.

The jury was instructed that if they found for Sade, they should "compensate him for his losses, if any, which occurred as a direct consequence of * * * [his] reliance on and as a direct consequence of the false representations of the Defendant, if any * * *." This instruction, though rather broad in its language, would appear to be in line with two Oklahoma statutes. 23 O.S. § 61 and 76 O.S. § 2. See, too, the reasoning in Kennedy v. Raby, supra.

Northern objected to this instruction on the ground that the proper measure of damages was the "fair settlement value" of Sade's claim against Northern, citing such cases as Rochester Bridge Co. v. McNeill, supra, and Urtz v. New York Cent. & H. R. R. Co., supra. This particular objection was overruled and Northern now assigns that ruling as error.

We need not be here concerned with whether the cases cited in the preceding paragraph fully support the proposition for which they are urged. It would at first blush seem to us to be a bit unfair to have Sade's damages determined on the premise that Sade was required to settle his claim. However, we need not explore all the ramifications of this matter. It is sufficient to say that in our view Oklahoma law, both statutory and case-made, justified the trial court in refusing to instruct the jury that the measure of damages was the figure for which Sade's claim would have ultimately been settled.

As a corollary of its damage argument, Northern claims it should have been allowed credit for the $17,500 it gave Sade, and for the $35,000 it gave Dresser's workmen's compensation carrier in return for the latter's surrendering its subrogation rights. Evidence pertaining to both of these items was before the jury, and in connection therewith, the jury was instructed to disregard both in assessing Sade's damages. Northern argues that the instruction to thus disregard was in error, and that the error can be corrected even at this late date by simply deducting from the judgment, as it now stands, the sum of $52,500 representing the sum of $17,500 and $35,000. In our view, under the circumstances, Northern should be given credit for $17,500, but not for the $35,000 figure.

The evidence pertaining to the $35,000 settlement between Northern and Dresser's compensation carrier is too meager to really allow a consideration of the matter on its merits. It would appear that in return for the payment by Northern of $35,000, Dresser's carrier released all subrogation rights which it might have arising out of the payment by it of a number of compensation benefits arising out of the filing of a considerable number of claims by injured workmen. What portion of this $35,000 could be attributed to Sade is impossible to determine. All of which fortifies us in our conclusion that, on the record before us, credit cannot be given Northern for the $35,000 it paid Dresser's insurance carrier.

However, in our view credit should be given Northern for the $17,500 it paid Sade for a release which has now been held to release both Northern and its employees from liability. Throughout the trial Sade proceeded on the premise that his damages were the sum which he could have reasonably expected to have recovered from Northern's employees if his cause of action against them had not been barred by the fraudulently procured release. The jury has now set that figure at $200,000. It would appear to us that in such setting Northern should be given credit for the $17,500 previously paid Sade. Such result would appear to be in accord with Southwestern Nat. Life Ins. Co. v. Wampler, 163 Okl. 3, 20 P.2d 189 (1933), where it was held that in an action to

recover the balance allegedly due on an insurance policy, it was not necessary to tender back or return the consideration received in a settlement agreement obtained under duress and that it was sufficient to offer to "credit such amount on the judgment." *See also* Pecinosky v. Oklahoma Aid Ass'n, 131 Okl. 240, 268 P. 309 (1928).

### V. Procedural irregularities occurring during the course of the trial.

At the outset of the trial, the trial judge indicated that he was not going to permit the introduction of evidence that Sade had received workmen's compensation benefits or evidence that at the time of the accident Northern carried liability insurance which covered its employees. Thereafter, in cross-examining Sade, counsel asked why he would consider suing one of Northern's employees, instead of Northern itself, and Sade's answer was to the effect that he assumed the employees were covered by Northern's insurance. No objection was made to the answer as not being responsive. And in our view the answer would certainly seem to have been invited by the question.

In any event, because of several other instances of the type just related, i. e., the mention of compensation benefits and "insurance," the trial judge determined to advise the jury that Sade had in fact received compensation benefits and, additionally, that Northern did carry liability insurance on its employees. Whether the trial judge acted wisely in thus advising the jury, or whether he should have let the matter lie where it was, is debatable. In any event, though Northern did object, at least mildly, the matter at the time did not appear to be a major problem. No request for any mistrial, for example, was made. It was only after the verdict had been returned that the matter took on increased significance. Under all the circumstances, we deem any error in this regard to be harmless under Fed.R.Civ.P. 61. When viewed in context, it is not such a matter as would require a new trial.

Additionally, it is argued that counsel for Sade was allowed to improperly cross-examine, to repeatedly argue with Northern's witnesses, and the like. We have examined those matters and find nothing which would warrant a reversal of the case.

The judgment as entered by the trial court is reduced to the sum of $182,500, plus interest and costs, and, as thus modified, the judgment is affirmed.